Judge Ewing
delivered the Opinion of the Court.
This case was formally before this Court, and the judgment then obtained against the present plaintiffs was reversed, and the cause remanded for a new trial, upon so be ground that the jury had not found, in their verdict, the amount of assets which had been misapplied by the administrator. A report of the case will be found in 3 Dana, 137.
Upon the return of the cause to the Court below, an order was made granting a new trial, and a judgment given against the plaintiffs for costs. A writ of error is prosecuted to reverse that judgment.
Upon the final trial, a verdict was found against the plaintiffs for six hundred and forty dollars, and judgment having been rendered thereon, and a motion for a new trial overruled, the plaintiffs have brought that case to this Court, for reversal, by appeal.
The judgment for costs is certainly erroneous. The verdict was imperfect, in failing to find the amount of *399 assets that had been misapplied, and the judgment was improperly rendered upon it, and, upon that sole ground, was reversed, and a new trial ordered, unconditionally, by this Court. It was evidently improper, under the circumstances, for the Circuit Court to make the new trial depend upon the payment of costs, or to award a judgment against the plaintiffs for costs.
Facts.
Upon the death of a partner, the settlement of the partnership business devolves exclusively upon the survivor; and he may pay open accounts against the firm, in preference to judgments against the deceased only. After all debts of the firm are paid, the decedent’s share of the residue must go to his personal representative, to be administered. And, where a surviving partner gave the administrator of the deceased partner accounts to collect, and they were met by claims of set-off, the adm’r was bound to allow them, and was chargeable only with the balance rec’d and retained, with the assent of the surviving partner.
But the most important question is presented on the appeal. The appellee sued Ely, and Shrieve his surety, on the appeal bond of the former, as the administrator of Davenport, for a devastavit. He held a judgment against Davenport, the intestate, of which the administrator had due notice, and contends that he applied the assets to the payment of debts of inferior dignity, to the exclusion of his judgment.
It appears, from an examination of his settlement with the County Court, that he paid out a large sum of money, which seems, at first view, to have been paid in discharge of open accounts. But, upon a careful scrutiny of his vouchers, it will be seen that the greater portion of this sum was paid by the offset of accounts, and that no money actually passed.
A considerable amount of the large debt against him was not for money which actually came to his hands, but was for accounts which were, in part, delivered to him, as agent, to collect, by a surviving partner, and which were offset against accounts due from the firm. And, in part, for accounts and claims which were due the intestate, and which were offset by the administrator against accounts and demands due to the same debtors by the intestate at his death. If these offsets were properly allowed by the administrator, it is evident, without going into a minute examination of the accounts, that the administrator, if guilty of a devastavit to any extent, is not guilty to the extent found against him.
The surviving partner alone had the legal right to settle the partnership accounts, and might undoubtedly *400 have paid open accounts against the firm, in preference to judgment debts against an individual of the firm. On him devolved the exclusive right to settle the accounts and demands in favor of and against the firm, and to pay over to the administrator of his deceased partner his share of the profits, after the payment of all the debts, which, when paid to him, and not before, would constitute assets in his hands.
Any debt or demand which constitutes a legal set off, for or against a party, in his life time, if still subsisting at the time of his death, will constitute a good set-off, for or against his adm’r; who will not be guilty of a devastavit, if—tho’ judg’ts and bonds exist against the estate—he allows simple contract debts due from his decedent, to be set-off against debts of superior dignity due to the decedent, when the set off could have been enforced in the decedent’s life time.
Some of the accounts, it is true, were delivered to Ely, by the surviving partner, for collection; but they were delivered to him as agent, and not as administrator; and, as such, he had the undoubted right to make the same offsets, in the settlement of those accounts, which his principal had the right to do. They were not assets in his hands until they were collected, and not then until the debts of the firm were paid off. His intestate’s share of the profits, after the payment of all debts against the firm, if collected, and in hand, as administrator, by the assent of the survivor, it would be his duty to apply in the course of administration.
In relation to the offsets which were allowed by the administrator, of debts and accounts due to the intestate at his death, against the debts and accounts due from him, at the same time, to the same debtors, the question arises, whether such offsets were proper to be allowed by the administrator, under our statute of set-off, when debts of superior dignity were outstanding against the estate.
If the debtor, in a suit brought against him, could successfully plead a set-off in such a case, it would seem to follow that it would be proper for the administrator to allow the set-off without suit.
At common law, if there were mutual, unconnected debts, the one could not be offset against the other, but each must sue. 6 Ba. Ab. 135; 4 Burrow, 2221, Green and another vs. Farmer and others. In the latter case, Lord Mansfield remarks, “ The natural sense of mankind was first shocked at this in the case of bankrupts: and it was provided for by 4 Anne, c. 17, 11 and 5 Geo. II. c. 30, 28.” “And, when there was no bankruptcy, the injustice of not setting off (especially after *401 the death of either party,) was so glaring, that Parliament interposed by 2d G. 2, c. 22. Montague on Set-Off, 16, note, 22 and notes.
From which it is clear that it was regarded as unjust, and shocking to the sense of mankind, that a debtor to a testator or intestate, at his death, should be compelled to pay his debt, when a debt was due to him of equal or greater amount, which he might never be able to coerce from the executor or administrator, for the want of assets, after discharging debts of superior dignity. And it will strike the senses of mankind as more glaringly unjust, when it is considered that mutual debts are frequently contracted upon the implied understanding, that the one is to be taken—and was so intended by the parties when the same was contracted—in extinguishment of the other.
One of the chief motives for the enactment of the foregoing statute of 2 Geo. II., was to provide against this manifest injustice. And the uniform current of English decisions, upon their statute, has given to it this construction.
But the language of the English statute of set-off differs from our statute. The former provides, “That, “ when there are mutual debts between the plaintiff and “ defendant, or if either party sue or be sued as executor or “ administrator, where there are mutual debts between the testator “ or intestate, and either party, one debt may be set against “ the other,” &c. 6 Ba. Ab. 135.
Our statute provides, “ When any suit, for any debt “ or demand, is depending, &c. it shall be lawful for the “ defendant, on trial, if the plaintiff should be indebted “ to him, to plead the same in discount, or by way of “ set-off, or to give the same in evidence on the general “issue,” &c. And the question occurs, whether this diversity in the language of the two statutes should produce any diversity in their interpretation, in relation to the set-off under consideration. We think it ought not. As the chief motive for the enactment of the English statute, was to provide against the injustice alluded to, we think it could not have escaped the intention of our Legislature to provide against the same injustice. And *402 we think the language of the statute is sufficiently broad, without doing violence to its terms, to embrace the case.
A debt that was contracted by a party in his life time, is not an available set-off against a demand due to his ex’or or adm’r, as such, by contract with him.
Mutual debts between plaintiff and defendant, provided for in our statute, as well as in the first clause of the English statute, may be construed to apply as well to debts due to and from them in their fiduciary character as to and from them in their individual character. In the one case they sue or are sued as the mere representative of the testator or intestate; in the other, in their own right. In the former case, as the testator or intestate, if living, would be subject to the set-off, his death should not place his mere representative upon better ground. If the debts were mutual when he was living, their mutuality cannot be destroyed by his death. If suit could be brought for or against the decedent, in his own name, the same set-off that would have been allowed in favor and against him when living, would still be allowed, as their mutuality would not be changed. As his executor or administrator is substituted in his place, merely to represent him, the right of set-off is not changed or lost.
If this be the proper construction, the latter clause of the English statute was inserted, not to provide for a distinct case, or to add to the first clause, but to render it more unequivocal in its construction, as embracing the case of set-off of debts due to or from testators or intestates at their death.
Consistent with this construction, is the whole tenor of the adjudications of this Court.
It has been repeatedly decided, that a debt due by a testator or intestate, could not be pleaded as a set-off to a note given to the executor or administrator—Hardin, 252; 2 Bibb, 362; 4 Bibb, 566; 5 J. J. Marshall, 385—because such debts were not due in the same right, nor were they mutually subsisting debts, at the death of the testator or intestate. And to allow a set-off in such cases, as determined by the English Courts upon their statute, would be to disturb the course of administration. And the decisions in the above cases go on the same ground. This distinction yields the admissibility *403 of the set-off in the case of mutual debts due to and from a testator or intestate at his death.
And in the case of Banton vs. Hoomes' Executors, 1 Marshall, 19, the Court says: “As the writing, upon which “ the suit was brought, implies an acknowledgment of a “ debt due Hoomes in his lifetime, it was certainly competent for Banton, upon showing a mistake in the settle- “ ment, to avail himself, by way set-off, of any debt due him by the decedent in his lifetime."
As our statute, as well as the English statute, gives, absolutely and unconditionally, the right of set-off, without any saving or exception in favor of outstanding debts of superior dignity; and as the chief inducement to the enactment of the English statute, as expounded by their courts, was to remedy the manifest and glaring injustice of the rule which enabled an executor or administrator to coerce a debt from one person, to be applied to the payment of a bond or judgment of another,when such person held a debt or demand against the testator or intestate at his death, which may, perhaps, have been contracted upon the faith that the one would be applied in extinguishment of the other, it would seem necessarily to follow, that the existence of outstanding debts of superior dignity could not be relied on to defeat the right of set-off expressly given by the statute.
The statute, to the extent of such set-off, is a virtual, repeal of the common law rule, which requires the application of the funds of the decedent first to the payment of debts of superior dignity. Or, rather, it allows the set-off to attach and to operate as an extinguishment of that amount of the debt due the testator or intestate, so that the same cannot be counted as assets in the hands of the executor or administrator. It goes upon the principle that one debt or demand is to stand against the other, and nothing is due, which can be applied in the course of administration.
Deducting from the debits of the administrator the set-offs which were proper to be allowed when tested by the foregoing rule, and also the funeral expenses and reasonable costs and charges allowable to the administrator for his trouble in the administration of the estate, *404 and also the judgment debt paid off by him, and it is obvious that, if guilty of any devastavit, it was not to the extent found against him; and, for this cause, a new trial should have been awarded the defendants below.
On an issue upon a plea of plene administravit, plaintiff must prove that some assets came to the hands of the deft; so, holding the affirmative, he is entitled to the opening and conclusion.
Trustees are not permitted to purchase the trust estate; and this rule applies to ex’ors & adm’rs; who ought not to hid at sales made under their direction.
An ex’r or adm'r who has advanced his own funds to pay debts of the decendent, may retain any specific chattels of the estate, at their fair value, for his indemnity. The appraisement is prima facie evidence, only, of the value. A purchase at the sale, may be evidence of the election.
*404 In relation to the remaining point assigned for error, it is only necessary to remark, that, on the issue upon the plea of plene administravit, to entitle the plaintiff to recover, the burthen of proof lies upon him, to show that assets to some extent came to the hands of the administrator. He, therefore, has the right to open and conclude the argument before the jury. 3 Bibb, 172, Wallace &c. vs. Barlow’s Administrator.
In relation to the gig of the intestate, which was valued, by the commissioners who made an inventory of the estate, at eighty dollars, and purchased by the defendant, at his own sale of the estate at public auction, at forty dollars, we would remark, that trustees are not permitted to purchase the trust estate, or any part of it, at their own sale, private or public. Because, from their situation, and the knowledge it enables them to acquire, they may be tempted to commit a fraud upon their cestui que trust. The law is so jealous, lest they may take advantage of their situation to benefit themselves, that it prohibits them from purchasing altogether. 1 Maddock’s Chy., 110, and the authorities there referred to. And this rule applies, in general, to executors and administrators, as well as to other fiduciaries.
It is, therefore, in general, improper for an executor or administrator to bid for property sold by him at public auction. His bid is calculated to throw a damp over the sale, and to paralize competition in bidding.
,
But, inasmuch as the administrator had the right to elect to take to himself a specific chattel of his intestate, as a compensation for money advanced out of his own fund for the payment of debts of the estate, his purchase at the sale is equivalent to an election to take the gig at its value when sold. 5 Littell, 204, Haddox’s Heirs vs. Haddox’s Administrator.
And as there is some uncertainty as to the intrinsic value of the gig at that time, we would remark, that the commissioner’s report, who made out the inventory and *405 valuation of the estate, is prima facie and persuasive, but not conclusive, evidence of its value. It may be inquired into, and countervailed by other credible testimony.
The judgments of the Circuit Court, in both cases, are reversed, and causes remanded, that an order may be made for a new trial, in the first case, without costs; and that a new trial may be awarded in the second case.