[S. F. No. 947. Department Two.—December 30, 1897.]

MARGARET SUTTON AINSWORTH, Executrix, etc., Respondent, v. BANK OF CALIFORNIA, Appellant.

ESTATES OF DECEASED PERSONS—ACTION BY EXECUTOR—DEPOSIT IN BANK BY DECEDENT—NOTE OF DEPOSITOR ACCRUING AFTER DEATH—COMPENSATION OF CROSS-DEMANDS—COUNTERCLAIM.—In an action by an executor to recover from a bank the amount of a deposit made by the decedent, the bank has the right to claim as against the executor a compensation of cross-demands by credit of the amount of the deposit upon a note for a larger sum made by the decedent to the bank in his lifetime, and which accrued subsequently to his death and prior to the commencement of the action, the demands being deemed compensated so far as they equal each other, under section 440 of the Code of Civil Procedure; and has the right also to plead the note as a counterclaim to the action by the executor to recover the amount of the deposit, under sections 437 and 438 of the same code, the note being a matured claim upon contract existing at the commencement of the action.

ID.—TITLE OF EXECUTOR OR ADMINISTRATOR—RELATION—SUBJECTION TO COUNTERCLAIM—BALANCE OF MUTUAL DEMANDS—PURPOSE OF LAW—The title of an executor or administrator to the assets of the estate takes effect by relation from the death of the decedent, but it passes subject to any right of setoff or counterclaim existing in favor of a creditor of the estate; and the purpose of the law in adjusting mutual demands in favor of the estate and of a claimant against it, is to ascertain the balance existing, and to give both to the claimant and to the estate the benefit of all just setoffs, whether the estate be solvent or insolvent; and claims not liquidated and debts absolutely due, though payable in future, are to be included in the adjustment, and the balance found upon such adjustment is the only debt remaining.

ID.—CONSTRUCTION OF CODE—EFFECT OF DEATH BEFORE MATURITY OF DEMAND—OFFSET AGAINST EXECUTOR.—The statute of setoff relates to the situation of the parties at the commencement of the action; and the death of one of the parties to the demand, though

such death occur before the maturity of the demand, will not change the relative rights of the parties in pleading a counterclaim, or in compensating cross-demands so far as they equal each other, provided the setoff be due when the action is commenced by the executor.

APPEAL from a judgment of the Superior Court of Alameda County. W. E. Greene, Judge.

The facts are stated in the opinion.

James M. Allen, for Appellant.

Davis & Hill, and Rodgers & Paterson, for Respondents.

CHIPMAN, C.—The facts are admitted and found to be as follows: September 27, 1895, George J. Ainsworth, plaintiff's testator, executed his note to the Bank of California for $10,000, payable December 26, 1895. He was a customer of the bank, and at his death, October 20, 1895, had on deposit there to his credit the sum of $5,974.25. On December 26, 1895, the day the note matured, the bank, without the consent of respondent, applied this sum on the note. On December 30, 1895, letters testamentary were issued to respondent by the superior court of Alameda county. February 17, 1896, respondent presented her check for said deposit to the bank and demanded payment, which was refused. February 21, 1896, the bank presented its claim on said note therein, crediting it with said sum of $5,974.53, which claim was rejected on March 3d. On March 9, 1896, plaintiff commenced her action to recover the sum so deposited. In its answer the bank set up its presented claim and claimed the right to use it as a counterclaim under sections 437 and 438 of the Code of Civil Procedure, and also the right to apply said deposit on said note by virtue of its banker's lien, and also that the two debts—the note and said deposit of $5,974.53—should be deemed compensated, so far as they equal each other, under section 440 of the Code of Civil Procedure. There is no finding or evidence as to the solvency or insolvency of the estate. The court denied the right of defendant to use the note as a counterclaim, or to apply the said sum of $5,974.53 on the note, and denied the right to such "compensation." Judgment was given for plaintiff for $5,974.53, and for defendant for $10,000

and interest payable in due course of administration. The appeal is from the judgment and comes here on bill of exceptions.

Under section 437 a defendant may answer by: "2. A statement of any new matter constituting a defense or counterclaim." A counterclaim is, by section 438, defined to be: "One existing in favor of defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action: . . . . 2. In an action arising upon contract; any other cause of action arising also upon contract and existing at the commencement of the action."

Counsel for plaintiff make an ingenious argument to the effect that these sections simply prescribe a rule for pleading counterclaims—how to plead them and what qualities they must possess in order that they may be pleaded—but leaves the question entirely open "as to what counterclaims are, and what are not, claims upon which a several judgment might be had in the action." It is true that section 438 says that the counterclaim mentioned in section 437 must possess certain elements, but it goes further, we think, and defines what a counterclaim is, as well as when it may be pleaded. The section practically says that a counterclaim is defined to be what the section says may be pleaded as such. It is suggested by respondent that a rule which would allow this counterclaim would, in many cases, take assets out of administration, through proceedings in which other creditors could not be heard; would pay one creditor to the exclusion of others; would render inoperative provisions for the temporary support of the family of the deceased—to which all debts are postponed; and therefore the rule cannot be sound. (Citing *Fitzpatrick v. Brady,* 6 Hill, 581; *Leiper v. Levis,* 15 Serg. & R. 108; *Jordan v. National etc. Bank,* 74 N. Y. 467; 30 Am. Rep. 319.)

Respondent makes the point also that the counterclaim should be rejected for want of mutuality, grounding the objection upon the fact that the note of deceased was not due when he died, and that nothing ever did become due from him; that plaintiff sued as executrix in her representative capacity for a debt due the deceased at his death, and her title and right of action are to be considered as of that date, as is also the right of defendant to set up the counterclaim, at which time nothing was due defend-

ant. (Citing *Patterson v. Patterson*, 59 N. Y. 574; 17 Am. Rep. 384.)

The contention is that if A owes B $1,000 upon a promissory note, and B owes A a like sum on a promissory note, both due on the same day in the future, and A meanwhile dies, A's administrator may sue and recover when B's note to A matures, but B cannot plead A's note by way of counterclaim because B now owes the estate and not A, and there is no mutuality because a right of action on A's note did not accrue in A's lifetime. Such is the apparent reasoning of *Patterson v. Patterson, supra,* and also of *Jordan v. National etc. Bank, supra,* cited by respondent.

In the case cited from 6 Hill the *pro rata* distribution of an estate was not a question; the case is not in point. *Leiper v. Levis, supra,* was decided upon the construction given to the act of 1794, then in force in the state of Pennsylvania, and the question was as to the right of a judgment creditor of an insolvent estate gaining a priority over other judgment creditors by taking out and levying a *fieri facias* which related to a day prior to the intestate's death. The case does not seem to throw any light on this case.

In *Patterson v. Patterson, supra,* plaintiff, as executrix, brought suit to foreclose a mortgage executed by defendant to plaintiff's testator given to secure a promise in the nature of an annuity, which by its terms was made to depend upon the testator's death, and was payable to his executrix or administratrix after his death. Defendant set up as counterclaim a claim for rent due him from the testator at the time of his decease. It was said there was no mutuality, and the setoff was disallowed. The case follows the construction given by the English courts to the statute of 2 George II, chapter 22, to which the New York statute was similar. The decision is well considered and was followed in *Jordan v. National etc. Bank, supra.* The statute of New York (2 Rev. Stats., sec. 23) reads: "In suits brought by executors, etc., demands existing against their testators, etc., and belonging to the defendant at the time of their death, may be set off by the defendant in the same manner as if the action had been brought by and in the name of the deceased." The case of *Patterson v. Patterson, supra,* does not necessarily support respondent, although, as interpreted in *Jordan v. National*

*etc. Bank, supra,* it may be so applied.   In this latter case the relation of the claims of the parties was the reverse of *Patterson v. Patterson, supra.*   Jordan sued as administratrix on a demand owned by the intestate in his lifetime, and due and payable to him then; while the promissory note which defendant sought to set off, though owned by it in the lifetime of the intestate, was not due and payable until after his death.   It was held that for a demand to be set off against an executor or administrator, in an action brought by him, it must have been due and payable from the decedent in his lifetime.   We think that the provisions of our section 438 of the Code of Civil Procedure, read with section 440, are different from the New York statute.   The clause "any other cause of action arising upon contract, and existing at the commencement of the action" (Code Civ. Proc., sec. 438, subd. 2) is not in the New York statute.   Section 440 provides that: "When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other a counterclaim could have been set up, the two demands shall be deemed compensated so far as they equal each other, and neither can be deprived of the benefit thereof by the assignment or death of the other:"   Our statute of setoff, we think, relates to the situation of the parties "at the commencement of the action," and the death of one of the parties to the demand, though such death occur before the maturity of the demand, will not change the relative rights of the parties in pleading a counterclaim or in compensating the claims so far as they equal each other, provided the setoff be due when the action is commenced.

·  In New Hampshire and Massachusetts, the statutes were said to be substantially the same as the statute of George II.   In both these states the rule contended for by appellant was sustained.   In *Mathewson v. Strafford Bank,* 45 N. H. 104, where the question was examined, and the rule as in *McDonald v. Webster,* 2 Mass. 498, and *Bigelow v. Folger,* 2 Met. 255, was followed, a clear distinction is drawn between debts or demands to and from executors in their own right "and those where the transactions were wholly between the deceased and the adverse party in the lifetime of the former, but the contingent claims have become absolute, and the claims not due have become payable

after the decease." Said the court: "We are unable to see why such demands should not be set off against an administrator when they become absolute and payable."

We cannot assent to the doctrine that our statute does not apply because the cross-demand of the bank was not due when plaintiff's testate died; it was due when action was brought. (*St. Louis Nat. Bank v. Gay,* 101 Cal. 286. The debt existed at his death.

Section 61 of the Indiana code (2 Rev. Stats. 1876, p. 64) reads almost as our section 440, *supra;* there is no substantial difference. In *Convery v. Langdon,* 66 Ind. 311, the New York cases and the New York statute *supra* were considered, and it was said: "The cross-demand must have been an existing demand against the testator or intestate at his death. It is not necessary that the cross-demand thus existing should have become due at the time of the testator's death. It is sufficient if it become due and payable in time to be pleaded as a setoff in the same manner as if the testator or intestate had lived to bring the action." (See, also, Waterman on Setoff, secs. 24, 97; *Rawson v. Copland,* 3 Barb. Ch. 166 (limited and distinguished in *Patterson v. Patterson, supra*); *Matthewson v. Strafford Bank, supra; Skiles v. Houston,* 110 Pa. St. 255; Byles on Bills, 531, and note 8; *Temple v. Scott,* 3 Minn. 419.)

It is laid down as the rule in Woerner's Law of Administration, volume 2, section 398, supported by cases there cited, that where the defendant and deceased had mutual dealings, the judgment can be only for the difference between the claims of the creditor and the decedent; and this is there said to be true, whether the debts are payable simultaneously or the one *in præsenti* and the other *in futuro.*

The claim of respondent that by the death of plaintiff's testator the demand passed *eo instanti* to his representatives and took date by relation to the date of the testator's death, is correct only to this extent, that it passed subject to any right of setoff or counterclaim in appellant. The demand was not an asset of the estate in the sense claimed and to the exclusion of appellant's right of setoff. As was said in *Richardson v. Parker,* 2 Swan, 529: "The notes and accounts of the deceased are not assets if they have been discharged by payment, the creation of adverse accounts, or otherwise; it is only what remains after all just settle-

ments with the debtor of the estate, which goes into the funds for distribution." (See *Finnell v. Nesbit*, 16 B. Mon. 351, and *Ely v. Commonwealth*, 5 Dana, 398, therein referred to. See, also, *Ford v. Thornton*, 3 Leigh, 695.)

That the title of the administrator to the assets of the estate takes effect by relation, from the intestate's death, respondent cites *Babcock v. Booth*, 2 Hill, 181; 38 Am. Dec. 578. In that case, the general rule was stated to be that the administrator can only maintain such claims as the testator or intestate might have successfully asserted if living. An exception to the rule was found in the case cited, however, where the deceased was a fraudulent vendor who remained in possession until his death, and as to his creditors the sale was held void against the fraudulent vendee, who took the property from the possession of the widow after her husband died. We do not think the case before us would be an exception to the general rule as above stated, or that the creditors of the estate would stand in any better position than the testator would himself have stood had he lived and had drawn his check after his note was due and had been refused payment.

Under our code provisions as to claims against estates of deceased persons, it is compulsory upon the claimant to present his claim under oath stating all offsets and credits. Without doing this he cannot maintain an action or be paid his claim. The purpose of the law, we think, is to ascertain the balance existing, and to give to both the claimant and the estate the benefit of all just offsets whether the estate be solvent or insolvent. As was said in *Aldrich v. Campbell*, 4 Gray, 284: "The settlements with such estates [insolvent] are final, and all mutual demands are to be balanced. Claims not liquidated, and debts absolutely due, though payable in the future, are to be included. The balance found upon such adjustment is the only debt remaining. In the case of an insolvent estate of one deceased, all claims existing at the time of the death are to be set off." If this is sound law in the case of insolvent estates, and we think it is, it certainly must be so if the estate be solvent, for no harm can come to anyone by applying the rule in the latter case.

We find nothing in the sections of the Code of Civil Procedure cited by respondent in conflict with this view of the matter.

The inventory required to be made by the administrator or executor by sections 1443-46, and the duty imposed by section 1581 to take into his possession all the estate, etc., and to collect all debts due to decedent, etc., cannot affect the rights of creditors of the deceased or change their relations in respect of mutual obligations.

The view we have taken of the case makes it unnecessary to decide whether the appellant had a right to apply the deposit by virtue of the banker's lien claimed by it. We think the court below erred in its conclusions, and advise that its judgment be reversed and that judgment be ordered for defendant, payable in due course of administration, for the amount of its note and interest, less the amount of said deposit credited as of the date of December 26, 1895, the date when indorsed on said note.

Haynes, C., and Searls, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed and the judgment ordered for defendant, payable in due course of administration, for the amount of its note and interest, less the amount of said deposit credited as of the date of December 26, 1895, the date when indorsed on said note.

McFarland, J., Garoutte, J., Van Fleet, J.