[Civ. No. 3823.   Second Appellate District, Division One.—July 3, 1922.]

## C. W. PENDLETON, as Administrator, etc., Respondent, v. HELLMAN COMMERCIAL TRUST & SAVINGS BANK (a Corporation), Appellant.

[1] BANKING LAW — DEATH OF DEPOSITOR — INSOLVENT ESTATE — APPLICATION OF DEPOSIT TO UNMATURED NOTE.—A bank has the right to apply the amount of the deposit of a deceased depositor to the payment of a promissory note of the depositor owned by the bank, notwithstanding the note is not due at the time of the depositor's death, where his estate is insolvent.

[2] ID.— PRESENTATION OF CLAIM. — Under such circumstances, the presentation of a claim to the personal representative of the deceased is not required.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Edwin F. Hahn, Judge.   Reversed.

The facts are stated in the opinion of the court.

Page & Hurt for Appellant.

Kimball Fletcher for Respondent.

CONREY, P. J.—The plaintiff, as administrator of the estate of C. W. Pendleton, Jr., deceased, brought this action to recover the amount of a deposit credit of $360.33 as shown on the books of People's Trust and Savings Bank, a corporation.   By reason of transactions between the People's Trust and Savings Bank and the defendant bank, it is conceded that the liability, if any there be, is now the liability of the defendant.   C. W. Pendleton, Jr., died on April 25, 1919.   The answer of the defendant states that on February 28, 1919, the People's Trust and Savings Bank loaned to decedent the sum of $5,000, for which he gave his note, without security, payable ninety days after that date.   The note was not paid, and prior to the commencement of this action it was transferred to the defendant for the purposes stated

1. Depositor's insolvency as affecting right of bank to set off amount of deposit against his immatured indebtedness, note, Ann. Cas. 1915A, 689.

in the answer. It does not appear that any claim has been presented to the administrator for allowance of the amount of the note as a debt of the estate payable in course of administration. The answer further alleged that C. W. Pendleton, Jr., was insolvent at the time of his death, and that the assets of his estate were insufficient to pay his liabilities, and that the estate is insolvent.

The plaintiff having moved for judgment on the pleadings, this motion was granted and judgment entered in favor of the plaintiff for the amount of the deposit. From this judgment the defendant appeals.

For all practical purposes, the questions at issue are the same as if the deposit had been made in defendant bank and the note of decedent had been made to the defendant. The judgment rests upon the assumption that because the debt of Pendleton to the bank was not due at the date of his death, the bank never acquired any right of setoff, or any so-called "banker's lien" upon the deposit fund, whereby that fund could be applied toward payment of the debt owing but not then due from Pendleton; that, therefore, the bank, with reference to the note held by it, is only a general creditor, and as such creditor can only present its claim against the estate as an item wholly unconnected with the amount which decedent had left on deposit in the bank.

It is not to be denied that under ordinary conditions, where the debt to the bank is not due, the banker's right to set off a deposit against such debt does not exist. But in this case the depositor at the time of his death was insolvent. It is provided by section 3054 of the Civil Code: "A banker has a general lien, dependent on possession, upon all property in his hands belonging to a customer, for the balance due to him from such customer in the course of the business." Relying upon this section, respondent contends that the lien does not exist, because at the time of Pendleton's death the note to the bank was not due. In reply to this it might well be questioned whether the section is applicable to the case, since money deposited in a bank is not property of the depositor. The money belongs to the bank, which is the depositor's debtor for the amount deposited. Assuming, however, that the indebtedness of the bank to its depositor is lienable property within the terms of said section 3054, the contention that the lien is not enforceable here because

58 Cal. App.—29

the debt to the bank was not due takes no account of the fact of insolvency. In the majority of jurisdictions, in the states where the question has been presented, it has been held that on the insolvency of a depositor a right of setoff exists against the insolvent or his assignee, even though the debt is not due, the cases evidently proceeding on the theory that insolvency renders all debts due and furnishes of itself a sufficient ground for setoff. This proposition is stated, and the authorities on both sides of the question are collected, in a note found in Ann. Cas. 1915A, at pages 689, 690. *Gnarini* v. *Swiss American Bank,* 162 Cal. 181 [121 Pac. 726], is listed as sustaining the minority rule; which, however, it does not do. That case holds only that where a bank has mortgage security for a debt, it must exhaust that security before recourse can be had to the bank account or personal responsibility of the debtor. So far as we are advised, the question here presented has not been decided in this state. [1] We are of the opinion that the fact of insolvency of the debtor as applied to the situation existing in this case is sufficient to sustain the right of setoff in favor of the creditor bank, notwithstanding that the debt of the depositor was not due at the time when he died leaving an insolvent estate. The principles involved are discussed at length in *Nashville Trust Co.* v. *Fourth Nat. Bank,* 91 Tenn. 336 [15 L. R. A. 710, 18 S. W. 822]. In that decision it was noted that the doctrine of setoff, whether legal or equitable, is essentially a doctrine of equity. It was that natural justice and equity which dictates that the demands of parties, mutually indebted, should be set off against each other, and only the balance recovered, that gave birth to the idea of accomplishing the result in a judicial proceeding. Although the common law determined otherwise, the rule was amended, in the case of bankrupts, by English statutes. "In pursuance of these old statutes and of the dictates of equity, the principle of setoff between mutual debts and credits has, for nearly two centuries past, been adopted in the English bankrupt laws, and has always prevailed in our own whenever we have had such a law in force on our statute book; and it mattered not whether the debt was due at the time of bankruptcy or not." (*Carr* v. *Hamilton,* 129 U. S. 255 [32 L. Ed. 670, 9 Sup. Ct. Rep. 295, see, also, Rose's U. S. Notes].) "The jurisdiction of courts of equity

over the subject of setoff was exercised before there was any statute upon the subject. . . . By the civil law, from which the great body of our system of equity comes, a cross-debt was, by mere operation of law, without any act of the parties, extinguished. It was treated as an absolute payment. Courts of equity in this country, while not going so far, have accomplished the same results in numerous cases, by granting perpetual injunctions against judgments in favor of insolvent persons who were indebted in larger amounts to the judgment debtor. . . . The court, in all such cases, is governed, not by the statute of setoff, but by the general principles of equity.'' (*Nashville Trust Co.* v. *Fourth Nat. Bank*; *supra*.)   The court further held, in the case last cited, that insolvency of itself is a sufficient ground for the application of equitable setoff, and that the fact that the indebtedness on one side is not due when the setoff is claimed constitutes no obstacle to the assertion of the right against an insolvent debtor.

We perceive no reason why a bank's right of setoff, as against an insolvent depositor who is also indebted to the bank, should be confined to the statutory right of setoff recognized by the Civil Code. ''The 'banker's lien' referred to in section 3054 of the Civil Code was familiar, as a part of the law, long before the enactment of the codes. Section 3054 does not extend its scope.'' (*Berry* v. *Bank of Bakersfield,* 177 Cal. 206, 209 [170 Pac. 415].)   We may add, the section does not restrict the scope of the principles thereby recognized.   There is no magic in the statutory enactment of ,a rule derived from equity, whereby in receiving this legislative sanction the principle is deprived of its equitable qualities.   It is not just that the representative of an insolvent debtor who on another account is the creditor of his debtor should be permitted to enforce the insolvent's claim without paying the other, merely because the obligation in his favor is due while the correlative obligation is not due. ''It is well settled that the insolvency of a party against whom a setoff is claimed constitutes a sufficient ground for the allowance of a setoff not otherwise available.'' (*People* v. *California etc. Trust Co.,* 168 Cal. 241, 250 [L. R. A. 1915A, 299, 141 Pac. 1181].)

[2]   Respondent contends also that under the statutes of this state no claim can be used as a setoff and counterclaim

against the estate of a decedent unless the claim upon which the same is founded has been presented to the personal representative of the decedent. Thus, in *Reed* v. *Johnson,* 127 Cal. 540, it was indicated that an answer which set out a counterclaim against the estate of a decedent did not constitute a defense or counterclaim, it not appearing that the demand had ever been presented for allowance to the executrix. But in the case at bar the defense presented is not in the nature of a counterclaim. Its allegations are, in effect, that there exists no indebtedness of the defendant to the plaintiff. The bank is not seeking to collect its note from the decedent's estate. For that purpose its claim would have to be presented for allowance and for payment *pro rata* with other claims out of the assets of the estate, such as they may be. Appellant's claim here is that by reason of the insolvency of Pendleton, it was entitled to apply the amount of the deposit *pro tanto* to the payment of the note. This contention, we believe, should be sustained.

There is one decision of our supreme court, arising out of facts very much like those of the present action, except that in that case the bank presented to the executrix its claim, although not for the entire amount of the note, but for a stated balance, crediting thereon the amount of the deposit; and except, also, that the fact of insolvency did not appear. At the time of his death the decedent was indebted to defendant on a note not yet due, and had on deposit in the bank a lesser sum. When the note matured the bank applied on the note the amount of the deposit. The bank having refused to pay to the executrix the amount of the deposit, she brought this action. The supreme court, reversing the judgment of the superior court, held that the bank was entitled to credit for the amount of the deposit, as a cross-demand which might be set off against the note; that although the note of deceased was not due when he died, it was sufficient that it had become due when the action was brought. In its decision, the supreme court pointed out that there was no finding or evidence as to the solvency or insolvency of the estate. The decision was grounded upon the proposition that the purpose of the law was to ascertain the balance existing and to give to both the claimant and the estate the benefit of all just offsets, whether the estate be

solvent or insolvent. In view of this conclusion, the court held it "unnecessary to decide whether the appellant had a right to apply the deposit by virtue of the banker's lien claimed by it." (*Ainsworth, Executrix, etc.,* v. *Bank of California,* 119 Cal. 470 [63 Am. St. Rep. 135, 39 L. R. A. 686, 51 Pac. 952].)

The judgment is reversed.

Shaw, J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 31, 1922.

All the Justices present concurred.

Richards, J., *pro tem.,* and Myers, J., *pro tem.,* were acting.