[Civ. No. 6575. First Appellate District, Division Two.—February 1, 1929.]

FLORENCE B. HENDERSON, as Administratrix, etc., Appellant, v. ELECTRIC LOOP LAND COMPANY (a Corporation), Respondent.

FLORENCE B. HENDERSON, as Administratrix, etc., Appellant, v. RICHMOND ANNEX LAND COMPANY (a Corporation), Respondent.

FLORENCE B. HENDERSON, as Administratrix, etc., Appellant, v. HAVENSCOURT COMPANY (a Corporation), Respondent.

Gottesfeld, Mann & Carmody, Raymond Benjamin and William T. Kearney for Appellant.

Fitzgerald, Abbott & Beardsley for Respondents.

BURROUGHS, J., *pro tem.*—These three cases were consolidated for trial and are brought here upon one record.

The plaintiff, as the administratrix of the estate of Edward James Henderson, deceased, sought to recover from the defendant Electric Loop Land Company $13,336.39; from the defendant Richmond Annex Land Company $12,202.54; from the defendant Havenscourt Company $10,925.11. In each one of the three cases the court gave judgment for the defendant, and from said judgment the plaintiff appeals.

The cause of action is the same in each case. It is alleged as the foundation of the several actions, that during the lifetime of said Edward James Henderson certain contracts for the sale of real estate were entered into by him with the several defendants, whereby, as agent, he agreed to sell said real estate according to the terms of said contracts and for his services was to receive the compensation provided for in such contracts as and when the same were paid by the various purchasers of said land. That Henderson kept and performed all of the conditions of said contracts and that since his death the respective defendants have collected the amounts hereinbefore set forth and which are due under the terms of said contracts to plaintiff as the administratrix of the estate of Henderson, as commission for the sale of the lands described· in the several contracts and that said defendants have failed and refused to pay the same to the plaintiff as the successor in interest of said Henderson. The separate answers of the defendants admit the contracts, deny that Henderson performed the conditions thereof, allege that at the date of his death Henderson had been paid all commissions to which he was entitled under the terms of the contracts and that prior to his death the defendants did advance and pay to said Henderson on account of commissions then earned by him but not then due and payable all sums of money to which he was entitled. It is further alleged in the several answers that prior to the date of his death said Henderson made collections on account of sales

made by him pursuant to the contracts, and out of the money so collected by him defendants did advance and prepay to him the following sums of money, to wit: Electric Loop Land Company, $14,922.40, Richmond Annex Land Company, $36,962.88, Havenscourt Company, $13,536.29 on account of contingent commissions earned by him but not then due and payable under the terms of the contracts and that subsequent to the ninth day of January, 1924, the defendants made collections on account of sales made by said Henderson under said contracts in the respective amounts which the plaintiff is now seeking to collect from them and which would have been due to him or his personal representative on account of commissions earned by him prior to his death had he not been prepaid by defendants as aforesaid. It is further alleged in the answers that each one of the defendants presented a claim against the estate of said deceased for the several sums which Henderson had thus collected and that the amount of commissions collected by the defendants since the death of Henderson were credited upon said claim. It is further alleged in said answers that the defendants at the same time and in the same manner presented to plaintiff and filed with the clerk of the court, its contingent claim having for its basis the amount of commissions collected by the defendants, as aforesaid, provided the court should refuse to allow the same as a set-off against the claim for moneys belonging to the defendants and which had been collected by Henderson. At the trial the following facts were stipulated between the parties or proved by competent evidence: That Edward James Henderson died January 9, 1924, and in due time the plaintiff qualified as administratrix of his estate; that on January 1, 1918, said Henderson entered into a contract with the defendant Richmond Annex Land Company; April 8, 1918, he entered into a contract with the defendant Havenscourt Company; September 30, 1914, and May 8, 1918, he entered into contracts with the defendant Electric Loop Land Company. These contracts are the same in substance except as to names, tracts of land described, and amounts. Under their terms Henderson was employed as agent to sell the several parcels of land described and also to collect all unpaid installments of the purchase price of said land as the same fell due and pay them over to the defendant entitled thereto, except he

was authorized to retain his commission on the sales from the first payment and if the first payment was insufficient for that purpose then he was to retain from each subsequent payment seventy-five per cent thereof until his entire commission had been paid. It was also stipulated by counsel that unpaid commissions were contingent upon the purchaser paying future installments of his contract of purchase. At the time of his death Henderson had collected under the terms of the several contracts the following sums of money over and above all of the commissions to which he was entitled at that time and which sums he had failed to pay to the several defendants, to wit: Richmond Annex Land Company, $36,962.88; Electric Loop Land Company, $14,922.40; Havenscourt Company, $13,536.29. After the death of Henderson the several defendants took over the collection of the unpaid installments on sales made by Henderson and collected the following contingent commissions which were earned by Henderson under the terms of the contract: Richmond Annex Land Company, $12,202.54; Electric Loop Land Company, $13,336.39; Havenscourt Company, $10,925.11. That within the time allowed by law the defendants presented separate claims to the administratrix of the estate of said Henderson for the full amount of their respective claims and gave credit thereon to the estate for all sums of moneys collected by them as commissions. The defendants also included therein contingent claims for the amount of commissions collected by them since the death of Henderson provided the court failed and refused to allow them the credit upon the claim for the amounts which Henderson had collected and had failed to pay over to them. Each one of said claims bears the following indorsement: "The foregoing claim is allowed for (stating the full amount claimed by each defendant) this first day of December, 1924. Offset disallowed. Florence B. Henderson, Administratrix of the Estate of Deceased." It also appears from the evidence of Miss Peterson, who was the bookkeeper for the Electric Loop Land Company and Richmond Annex Land Company, that at the times Henderson appropriated the money, which should have been paid to the said defendants, he stated to her that he was merely paying himself in advance on his commissions and that he instructed her to charge the several amounts taken by him to his personal

account. The witness stated that it was the habit of Henderson before taking these several sums to compare his contingent commission account with the amounts that he was taking and that in nearly every instance he would state that he was merely paying himself in advance.

It further appears from the record that the estate of Henderson is insolvent, also that Henderson at the time of making the various contracts referred to and up to the time of his death was the president of each one of the defendant corporations.

■ Appellant claims that the findings of the trial court that the respective respondents were entitled to a credit or set-off against the demands of plaintiff on account of the several sums collected by Henderson during his lifetime are not sustained either by the pleadings or the evidence.

The first question we believe to be easily disposed of. The case was tried by both parties and by the court upon the theory that the defendants' right to a credit or set-off on account of said sums so collected by Henderson was in issue. That all parties so considered it appears from the record wherein it was stipulated by counsel that to obviate the necessity of filing supplemental pleadings, all collections made by the respondents after the death of Henderson and prior to October 31, 1926, should be used as the basis for a judgment in the several actions and counsel for the respondents then stated, "And we are entitled to the set-off,—our claim that we are equally entitled to it now as well as at the date of the commencement of the action?" to which counsel for appellant replied, "Yes." And the court having made its finding of fact upon said issue the objection cannot for the first time be raised upon appeal. (*Bayly* v. *Lee,* 174 Cal. 137 [162 Pac. 96]; *Smithson* v. *Atchison etc. Ry. Co.,* 174 Cal. 148 [162 Pac. 111]; *Lemberson* v. *Bashore,* 178 Cal. 321 [173 Pac. 401].)

In support of the claim that the findings are not sustained by the evidence, it is contended that there is an absolute lack of mutuality between the claims of appellant and those of respondents in that respondents' causes of action were against Henderson and arose during his lifetime and existed at the time of his death and that appellant's causes of action arose after the death of Henderson and accrued to his estate, as distinguished from the causes of action created in favor

of decedent during his lifetime. ■ There can be no doubt but that the general rule upon this subject is that contended for. by appellant and is tersely stated in *People* v. *California etc. Trust Co.*, 168 Cal. 248 [L. R. A. 1915A, 299, 141 Pac. 1184], where it is said: "The general rule, too, is well settled as claimed, that in actions by executors or administrators upon a cause of action arising to them after the death of the testator or intestate, a defendant cannot offset a demand against the decedent existing at the time of his death."

■ But under the evidence in these cases does it appear that plaintiff's causes of action are in favor of the estate of the decedent? All three of the causes of action sued upon by appellant are based upon contracts executed by Henderson during his lifetime. The sales from which the commissions were earned were made by Henderson, and were earned and could only be defeated by failure of the purchaser to pay future installments of the purchase price. The sums of money which the several respondents seek to offset against this claim of appellant arose out of the same contracts which they had executed with Henderson and the several amounts that they have asked for were retained by Henderson in violation of the very terms of the contracts which his administratrix now seeks to make the basis of her claim against respondents. We are of the opinion that the causes of action set out by the appellant and the offsets claimed by the several defendants are not lacking in mutuality so as to prevent and offset one against the other.

The California decisions cited by appellant do not appear to be in point. In *People* v. *California etc. Trust Co., supra,* the transaction arose out of a deposit in the bank by the administrator of funds belonging to the estate. The bank held an allowed claim against said estate based upon a promissory note made by the decedent during his lifetime. Under these circumstances it is clear that the deposit created a cause of action in favor of the estate, as distinguished from the cause of action in favor of the bank and which was in existence at the time of the death of said decedent. But it was also held in the case last cited that the general rule requiring mutuality was subject to exceptions and under the facts a set-off was allowed in that case. *First National Bank* v. *Wakefield,* 148 Cal. 558 [83 Pac. 1076], we believe is

distinguishable from the case at bar in that in the cited case the moneys which the bank sought to apply to a mortgage debt owed by decedent in his lifetime was a deposit of moneys in the bank made by the administrator of the estate to a partnership account, in the belief that they were partnership funds of himself and his intestate. In a proceeding had for that purpose, it was judicially determined that no such partnership ever existed. The bank thereupon transferred said funds to the account of the estate of the decedent and immediately re-applied them to the mortgage debt as aforesaid. This the supreme court held it might not do. The distinction to our mind is that the deposit made by the administrator, subsequent to the death of his intestate, could not be applied to a debt of deceased existing at the time of his death. Counsel cites a number of cases from foreign jurisdictions which seem to uphold his claim, but we are of the opinion that these cases do not find sanction in this state. (*Ainsworth* v. *Bank of California*, 119 Cal. 470 [63 Am. St. Rep. 135, 39 L. R. A. 686, 51 Pac. 952].)

But we are of the opinion that there is another reason why respondents were entitled to the offsets allowed by the court, particularly in view of the fact that at the date of the trial all sums of money claimed to be due the appellant had been collected by the defendants, and under stipulation of counsel the rights of all three parties, including any right of set-off, was for the purpose of avoiding the necessity of supplemental pleadings considered due as of that date, and under the decisions were the proper subject of set-off (*Ainsworth* v. *Bank of California, supra*), and we believe that this is a proper case for the application of the doctrine of "equitable set-off." It appears without contradiction that during his lifetime plaintiff's intestate under and by virtue of the contracts before the court came into the possession of thousands of dollars belonging to the defendants and which it was his duty to pay over to them, but which he unlawfully appropriated to his own use. By virtue of the same contracts the respondents have lawfully come into possession of certain commissions claimed by the administratrix of his estate, and which she is now seeking to recover from the respondents without offering to offset one debt against the other, this upon the plea that to allow

said set-off would work a preference among the creditors of the insolvent estate of her intestate. In other words, the respondents are asked to pay their debt to the estate in full and then share their own money *pro rata* with the other creditors. We believe the following cases negative such an unjust and inequitable rule and are decisive of these appeals.

In the case of *Pendleton* v. *Hellman Commercial Trust & Savings Bank,* 58 Cal. App. 448 [208 Pac. 702], the defendant bank applied the amount of a deposit held by it on a note made by decedent in his lifetime. The note was not yet due. The estate of the decedent was insolvent. The claim was made that as the note was not due the bank had no right to credit the deposit on the note. The court held that, ''under ordinary conditions, where the debt to the bank is not due, the banker's right to set off a deposit against such debt does not exist.'' But in this behalf the court held that the contention that the lien (banker's) was not enforceable because the debt to the bank was not due took no account of the fact of insolvency of the estate. It is further stated in the opinion of the court that so far as they are advised, the question has not been decided in this state. In laying down the rule that the doctrine of ''equitable set-off'' may be applied in cases of insolvency, the court says: ''We are of the opinion that the fact of insolvency of the debtor as applied to the situation existing in this case is sufficient to sustain the right of set-off in favor of the creditor bank, notwithstanding that the debt of the depositor was not due at the time when he died leaving an insolvent estate. Tho principles involved are discussed at length in *Nashville Trust Co.* v. *Fourth Nat. Bank,* 91 Tenn. 336 [15 L. R. A. 710, 18 S. W. 822]. In that decision it was noted that the doctrine of set-off, whether legal or equitable, is essentially a doctrine of equity. It was that natural justice and equity which dictates that the demands of parties, mutually indebted, should be set off against each other, and only the balance recovered, that gave birth to the idea of accomplishing the result in a judicial proceeding. Although tho common law determined otherwise, the rule was amended, in the case of bankrupts, by English statutes. 'In pursuance of these old statutes and of the dictates of equity, the principle of set-off between mutual debts and credits has, for nearly two centuries past, been adopted in the English

bankrupt laws, and has always prevailed in our own whenever we have had such a law in force on our statute book; and it mattered not whether the debt was due at the time of bankruptcy or not.' (*Carr* v. *Hamilton,* 129 U. S. 255 [32 L. Ed. 670, 9 Sup. Ct. Rep. 295, see, also, Rose's U. S. Notes].) 'The jurisdiction of courts of equity over the subject of set-off was exercised before there was any statute upon the subject. . . . By the civil law, from which the great body of our system of equity comes, a cross-debt was, by mere operation of law, without any act of the parties, extinguished. It was treated as an absolute payment. Courts of equity in this country, while not going so far, have accomplished the same results in numerous cases, by granting perpetual injunctions against judgments in favor of insolvent persons who were indebted in larger amounts to the judgment debtor. . . . The court, in all such cases, is governed, not by the statute of set-off, but by the general principles of equity.' (*Nashville Trust Co.* v. *Fourth Nat. Bank, supra.*) The court further held, in the case last cited, that insolvency of itself is a sufficient ground for the application of equitable set-off, and that the fact that the indebtedness on one side is not due when the set-off is claimed constitutes no obstacle to the assertion of the right against an insolvent debtor.

"We perceive no reason why a bank's right of set-off, as against an insolvent depositor who is also indebted to the bank, should be confined to the statutory right of set-off recognized by the Civil Code. 'The "banker's lien" referred to in section 3054 of the Civil Code was familiar, as a part of the law, long before the enactment of the codes. Section 3054 does not extend its scope.' (*Berry* v. *Bank of Bakersfield,* 177 Cal. 206, 209 [170 Pac. 415].) We may add, the section does not restrict the scope of the principles thereby recognized. There is no magic in the statutory enactment of a rule derived from equity, whereby in receiving this legislative sanction the principle is deprived of its equitable qualities. It is not just that the representative of an insolvent debtor who on another account is the creditor of his debtor should be permitted to enforce the insolvent's claim without paying the other, merely because the obligation in his favor is due while the correlative obligation is not due. 'It is well settled that the insolvency of a party

against whom a set-off is claimed constitutes a sufficient ground for the allowance of a set-off not otherwise available.' (*People* v. *California etc. Trust Co.*, 168 Cal. 241, 250 [L. R. A. 1915A, 299, 141 Pac. 1181].)''

The foregoing case also cites with approval *Ainsworth, Executrix, etc.*, v. *Bank of California, supra*, in the following language: ''There is one decision of our supreme court, arising out of facts very much like those of the present action, except that in that case the bank presented to the executrix its claim, although not for the entire amount of the note, but for a stated balance, crediting thereon the amount of the deposit; and except, also, that the fact of insolvency did not appear. At the time of his death the decedent was indebted to defendant on a note not yet due, and had on deposit in the bank a lesser sum. When the note matured the bank applied on the note the amount of the deposit. The bank having refused to pay to the executrix the amount of the deposit, she brought this action. The supreme court, reversing the judgment of the superior court, held that the bank was entitled to credit for the amount of the deposit, as a cross-demand which might be set off against the note; that although the note of deceased was not due when he died, it was sufficient that it had become due when the action was brought. In its decision, the supreme court pointed out that there was no finding or evidence as to the solvency or insolvency of the estate. The decision was grounded upon the proposition that the purpose of the law was to ascertain the balance existing and to give to both the claimant and the estate the benefit of all just offsets, whether the estate be solvent or insolvent. In view of this conclusion, the court held it 'unnecessary to decide whether the appellant had a right to apply the deposit by virtue of the banker's lien claimed by it.' ''

In *City Investment Co.* v. *Pringle*, 73 Cal. App. 782 [239 Pac. 302], in adverting to the rule of equitable set-off, the court says: ''The majority of the cases wherein the rule has been applied have been those in which a bank has sought to set off the unmatured indebtedness of an insolvent depositor to it as against a claim for the deposit by the depositor or his representative or as against the assignee of such depositor. The principle, however, applies in all cases where a right of the insolvent is asserted, and in accordance

with equitable principles set-off should be permitted. As held in *Nashville Trust Co.* v. *Fourth Nat. Bank, supra,* cited with approval in the cases of *Pendleton* v. *Hellman Com. etc. Bank, supra,* and *Coonan* v. *Loewenthal,* [147 Cal. 218, 109 Am. St. Rep. 128, 81 Pac. 527] *supra,* insolvency itself is a sufficient ground for the application of equitable set-off, and the fact that the indebtedness on one side is not due when set-off is claimed constitutes no obstacle to the assertion of the right as against an insolvent debtor. While it is our view that the claim of appellant as against respondents upon the fund on which it is sought to impose a lien is measured by the rights of the original lessee in the premises, should it be urged that there was no mutuality as between the demands of appellant and respondents, and that, therefore, respondents may not set off a claim for the deposit as against appellant's demand for the rent, it is well settled that a court of equity will take cognizance of a cross-claim between litigants though wanting in mutuality, and set off one against the other whenever it becomes necessary in order to effect a clear equity or prevent irremediable injustice (24 R. C. L., Set-off and Counterclaim, sec. 70, p. 865; *Georgia Seed Co.* v. *Talmage* [96 Ga. 254, 22 S. E. 1001], *supra; Kentucky Flour Company's Assignee* v. *Merchants' Nat. Bank,* 90 Ky. 225 [9 L. R. A. 108, 13 S. W. 910]); and, as held in the case of *People* v. *California etc. Trust Co., supra,* where an administratrix deposited funds in her hands as administratrix in a bank which held an allowed claim against the estate, the bank having subsequently become insolvent, a want of mutuality was no defense as against the right of the administratrix to set off her deposit claim against the allowed claim of the receiver of the bank.''

In the case at bar we are of the opinion that under the facts above shown, the rule applied by the court in *Pendleton* v. *Hellman Com. etc. Bank, supra,* and *City Investment Co.* v. *Pringle, supra,* applies with equal force, especially in view of the fact that under the stipulation of the parties all amounts claimed by appellants were then due. (*Ainsworth, Executrix, etc.,* v. *Bank of California, supra.*)

■ One other point in favor of the affirmance of the judgment is made by the respondent relating to the claim of the Electric Loop Land Company and the Richmond Annex

Land Company. In each one of these cases the testimony of Miss Peterson, the bookkeeper for said companies, shows that Henderson at the time of the appropriation of the several amounts of money which belonged to the said defendants stated to her that such payments were merely advances on his commissions; that he was paying himself in advance. We are of the opinion that these declarations on the part of Henderson, irrespective of equitable set-off, are sufficient to justify an affirmance of the judgment in said cases. No such evidence was introduced relating to the Havenscourt Company.

It is further claimed by the respondents that, Henderson being the president of all three defendant corporations, the utmost good faith was required in his dealings with said companies and that his administratrix cannot now be permitted to set-off Henderson's wrongdoings to enable her to collect the amounts claimed in the complaint. Under the views above expressed it is unnecessary to pass upon this question.

One other contention made by appellant for the reversal of the judgment is based upon the fact that all three of the respondents presented separate claims against the estate of the decedent for the several amounts which Henderson had collected and failed to pay over to them. They also gave credit on said claims for all sums which they had collected subsequent to the death of Henderson and which were due him as commissions. The administratrix of the estate allowed the claims in full but rejected the right of set-off. It is now claimed that the right of set-off having been rejected, the respondents were required to bring suit thereon within three months after such rejection, and having failed to do so the right of set-off is lost. (Citing sec. 1498, Code Civ. Proc.) The claims filed by respondents had attached thereto the affidavit provided by section 1494 of the Code of Civil Procedure, where it is held that a claim against an estate must be supported by an affidavit that the amount claimed is justly due and that there are no offsets to the same. We are of the opinion that the claims having been allowed for the full amount, and the only thing disallowed being a credit in favor of the estate, there was no rejected claim requiring suit. In the case of *Jones* v. *Walden*, 145 Cal. 523 [78 Pac. 1046], and in *Consolidated Nat. Bank* v.

*Hayes,* 112 Cal. 75 [44 Pac. 469], cited by appellant, there was a partial rejection of the amount of claim, and it was held that as to the portion of the claim rejected suit must have been brought within the statutory time. In the case of *Holt Mfg. Co.* v. *Ewing,* 109 Cal. 353 [42 Pac. 435], cited by appellant, a vendor under a conditional sales contract filed a claim for the purchase price of a harvester. He could not maintain an action for the possession of the same on the theory that title had not passed to the purchaser. We are, therefore, of the opinion that the contention is unsound.

The further contention of appellant that there is a material variance between the claims presented by the several defendants and their pleadings and proof does not appeal to us as being meritorious. The right of offset was considered by all parties as properly before the court, and whether or not the credit to which the several defendants were entitled be considered as money unlawfully converted by Henderson to his own use or as an advancement by the defendants, it would not constitute such a variance as was held fatal in *Etchas* v. *Orena,* 127 Cal. 588 [60 Pac. 45]; *Moore* v. *Gould,* 151 Cal. 723 [91 Pac. 616], and other cases cited by appellant.

We are satisfied that equity and good conscience require that the judgment in each one of the cases be affirmed, and it is so ordered.

Sturtevant, J., and Nourse, Acting P. J., concurred.

A petition for a rehearing of these causes was denied by the district court of appeal on February 28, 1929, and a petition by appellant to have these causes heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April, 1, 1929.

All the Justices present concurred.