[S. F. No. 1933.   Department Two.—December 11, 1901.]

PRESTON & McKINNON, Appellant, v. MARIA BREN-NAN (substituted for Hibernia Savings and Loan Society), Respondent.

ACTION UPON GARNISHMENT—MONEY IN BANK—TRUST—RELATION OF DEBTOR AND CREDITOR.—In an action upon a garnishment of money deposited by the debtor in a bank where his sister, substituted for the bank as defendant, set up a trust in part of the fund, such defense cannot be maintained where it appears that the brother was allowed to control and withdraw, and did withdraw, the money belonging to his sister, and that the relation of creditor and debtor arose between them, and that the account levied upon was the individual account of the brother alone.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Bahrs, Judge.

The facts are stated in the opinion of the court.

Edward C. Harrison, for Appellant.

Henry E. Highton, for Respondent.

TEMPLE, J.—The plaintiff having a judgment against P. J. Brennan, on the twenty-sixth day of February, 1896, levied an execution upon the amount due him from the Hibernia Savings and Loan Society. This suit was brought to enforce the liability of the bank upon the garnishment. At the time of the garnishment, the books of the bank showed a balance to his credit of $1,025.06. Maria Brennan, the sister of P. J. Brennan, who was duly substituted defendant for the bank, claims that eight hundred dollars of this money was held by P. J. Brennan as her trustee, and, therefore, is not subject to the levy.

The essential facts are concisely stated in the testimony of P. J. Brennan. He said: "First, I had an account in my own name at the Hibernia Bank; then I closed that and opened an account in my sister's name, in book No. 1731360, in which we kept our mixed account; and when I closed that, I re-opened the old account in my name, by the deposit of $2,000 on December 30, 1893. My sister's pass-book shows that there was withdrawn on that mixed account, September 15, 1893, $2,300. That is correct. And that account was closed on October 23, 1893, by the withdrawal on that day of $272.28, which was the next withdrawal after that of September 15, 1893. . . . I did not undertake to distinguish her money from mine of the $2,300 that was drawn on September 15, 1893. Only in a general way I know the amount of her money that was there. I know in a general way there was $915.00 belonging to her there, and that I paid her $115.00 before she went East, and that left $800.00 still due and payable to her in my hands. I could not positively say where that $800 was in the mean time before I made the deposit on December 30, 1893. . . . In making these disbursements I used the money I was getting from the owner. I might have used some of the $2,300 or $272.00 drawn from the bank. As a matter of fact,

I did not take this money that I drew out of the bank and put it away, and lock it up, and keep it separate, and afterwards deposit the same money. I did not use the $800 that belonged to my sister.

"*The Court.*—Well, did you ever use all of it? Did you ever use the $800.00 that belonged to your sister after you drew it?

"A. No, sir. I could not tell you how I did use the money which I took out of the Hibernia Bank. When the account in my sister's name was closed, I may have used it indiscriminately in my business."

Further, in response to a question, the witness said that he had the eight hundred dollars belonging to his sister on hand from the twenty-third day of October, when the account kept in the name of his sister was closed, until the thirtieth day of December, when he made the deposit of two thousand dollars.

It is a matter of controversy between counsel whether the witness testified that he had the amount of eight hundred dollars in hand all the time from the fifteenth day of September, when he took all the money from the bank except $272.28. The more obvious construction of the testimony is, I think, that he did not so testify. · He says he does not remember what he did with it. He might have had it in his pocket. He was at the time engaged on some large contracts, and was constantly receiving and paying out money. It is not conceivable that he drew from the bank this eight hundred dollars to carry in his pocket as trustee of his sister. By so doing he prevented her from getting interest upon it, and she certainly did not request any such thing. It is not contended that anything was said or done prior to October 23d from which the trust relation could be inferred. At that time the balance of the deposit was withdrawn, from which the plaintiff took $115. The fact, then, was simply that P. J. Brennan owed her eight hundred dollars, which amount he agreed to send her if she desired him to do so. Prior to that time they had kept a common account in her name. She says she paid no attention to his deposits in that account, because she had confidence in him. He did with it about as he pleased. In other words, he could use her money if he had occasion. It is not to be inferred without evidence that because he had the amount of his indebtedness to her on hand on the twenty-third

day of October and agreed to send it to her if she so desired, he agreed to keep it always on hand for her.  The evidence does not show that she knew or thought that he did have the money at that time.  If he did, and understood himself to be a trustee, it was his duty to put it where it would draw interest at once.  He kept it from the time it was drawn, in September, until the deposit, in December, more than three months.  If he did not think he might have occasion to use it, and had a right to use it, why did he?  He says that he might be able to deposit more with it.  If that money belonged to his sister, and he was not at liberty to use it, the reason given is hardly rational.

The natural relation between the parties under the circumstances is that of debtor and creditor, and neither testified to a word said on the twenty-third day of October, or at any other time, which would indicate any other relation.  She testified: "At the time I went East and left the money with him, I did not think that he was to use it in his building contracts.  I did not think anything about it.  Nothing was said about that."

He gave her a writing at the time she agreed to let him retain the money, as follows:—

" San Francisco, Oct. 23d, 1893.

" P. J. Brennan,

" In account with Maria Brennan.

"Amount deposited with Hibernia Savings and Loan
    Society...................................... $840.00
" Interest...................................... 75.00

                                                       $915.00
"Amount withdrawn this date.................... $115.00

    " Balance............................:...... $800.00

" P. J. Brennan."

Nothing in this statement indicates the trust relation.  It is clear, I think, that he could have used this money without violation of duty, and she, had he refused to pay on demand, could have sued out a writ of attachment.

The judgment is reversed and a new trial awarded.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.