JACOB L. NEWMAN, RECEIVER OF UNION INDEMNITY COMPANY, A CORPORATION, PLAINTIFF-RESPONDENT, v. HATFIELD WIRE AND CABLE COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Submitted May 25, 1934—Decided September 27, 1934.

For the plaintiff-respondent, *Farkas & Samuels* (*Harold Farkas,* of counsel).

For the defendant-appellant, *Hannoch & Lasser* (*Morris Weinstein,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. This is an appeal from a final judgment of the Supreme Court, Essex county, in favor of the plaintiff in a suit brought by him as receiver of an insolvent insurance company against the defendant. The complaint charged that the Union Indemnity Company (the insolvent) had issued a workmen's compensation policy of insurance to the defendant, insuring it against liability for personal injuries sustained by employes. The premium on same was ascertained by charging a certain percentage of the total payroll of the employer. An audit of the books showed the proper charge for premium to be $2,120.35 less the amount of $823.94 which had been paid on account by the assured, leaving a balance of $1,296.41. The second count demanded the sum of $19.94 on account of premium due on another policy of insurance and for these sums the action was brought.

The defendant answering says that nothing is due the plaintiff because the defendant had purchased other policies

of insurance of various kinds from the Union Indemnity Company, had paid the premiums thereon but that said policies were all canceled at the time of the insolvency of the company and that the company, through the cancellation of the policies, became indebted to the defendant in the sum of $516 for the unearned premiums.

A second separate defense sets out that the company had insured the defendant against liability on one of its automobile trucks; that an accident happened on account of which defendant became answerable in damages, arising out of the operation of the said truck and against which the defendant was insured; that suit was brought against this defendant by the injured persons; that the insurance company did not defend the suit, although the action was brought prior to its insolvency, and that the defendant had to engage counsel of its own and pay damages in the sum of $1,400.

A third separate defense asserts that the defendant was also insured by the insolvent company under a policy known as a compensation and employer's liability contract. An action for compensation was started against the defendant by an employe prior to the insolvency of the insurance company; that it failed to defend this action and that the defendant paid an award and expenses amounting to $125.

A fourth separate defense alleges that on April 28th, 1933, after the insolvency of the insurance company, another employe, claiming to have sustained an injury arising out of and in the course of his employment, started an action for compensation for injuries said to have been sustained on October 26th, 1932, which was prior to the insolvency; that the insurance company failed to undertake the defense of or settle the claim for compensation and that the defendant *will* be required to pay said award and costs in the sum of $300.

A fifth separate defense sets out a claim made by another employe alleging injuries sustained on November 1st, 1932, which was prior to the insolvency of the insurance company and during the period of coverage of an insurance policy purchased from the said company; that the company failed to investigate and undertake the defense of the action and that

the defendant has had to engage counsel and *will* be obliged to pay the award and costs in the sum of $500.

The defendant then set up a counter-claim for these several amounts which exceeds the plaintiff's claim. It will be observed that the first three items of the counter-claim represent liquidated sums, *i. e.*, the first, unearned premium; the second and third, amounts actually paid by the defendant for losses suffered during the coverage period of the policy and against which it was insured, while the fourth and fifth items represent possible or estimated damages which the defendant may have to pay.

The separate defenses and the several counts of the counter-claim were challenged as frivolous and the learned trial court struck them out as such and final judgment was entered in favor of the plaintiff.

The court, concluding that the defenses and counter-claim were frivolous, struck the first item because it was not due at the time of the insolvency and therefore as he found, not the subject of set-off at that time. The second, third, fourth and fifth items were struck out on the ground that they were unliquidated and therefore not the subject of set-off, resting his conclusion on the set-off statute (4 *Comp. Stat., p.* 4836), on *More* v. *Richards,* 90 *N. J. L.* 626, and on *Kanter* v. *Security Tr.,* 165 *Atl. Rep.* 430. The defendant appeals.

These authorities on which the trial court relied are not dispositive of these issues. The statute alone is not controlling. In *More* v. *Richards, supra,* the attempted set-off was not for a liquidated sum. In *Kanter* v. *Security Tr. Co., supra,* the attempted set-off was controlled by the provisions of the set-off statute. But such is not the case here.

The matter of set-off, unknown at common law, has been liberally and equitably construed in our state. Courts, generally, in the interest of common justice, have departed from the rigor of the language of the statute (set-off) and have freely applied equitable principles. In the case before us, the right of the defendant to have a set-off does not depend upon that statute alone. The provisions of the General Corporation act (2 *Comp. Stat., p.* 1643) and particularly the

sixty-sixth section, must be considered in connection with that right. The plaintiff is a receiver of an insolvent corporation and was appointed by our Court of Chancery. He derives the authority to wind up the affairs of the insolvent corporation by virtue of the provisions of that section (66) which empowers him "to demand, sue for, collect, receive  *  *  * all the goods and chattels, rights and credits, moneys and effects,  *  *  * of every description of the corporation, and to institute suits at law or in equity for the recovery of any estate, property, damages or demands existing in favor of the corporation, and in his or their discretion to compound and settle with any debtor or creditor of the corporation, or with persons having possession of its property or in any way responsible at law or in equity to the corporation at the time of its insolvency or suspension of business, or afterwards, upon such terms and in such manner as he or they shall deem just and beneficial to the corporation, and in case of mutual dealings between the corporation and any person to allow just set-offs in favor of such person in all cases in which the same ought to be allowed according to law and equity;  *  *  *."

Thus it will be seen that adjustments may be made by the receivers, claims settled and set-offs allowed as of the time of the insolvency of the company *or afterwards.* Applying equitable doctrine to the language of this section, it is plain that such receiver, appointed by a court of equity, is not only given discretion to settle and adjust debts and credits of the corporation but that it is his duty to do so. He must be governed by principles of equity and justice.

In the case of *Receivers* v. *Paterson Gas Light Co.,* 23 *N. J. L.* 283 (at *p.* 297), decided in 1852, Mr. Justice Elmer said: "Although this provision [*supra*] is in its terms directory to the receivers, yet inasmuch as what is authorized to be done is for the sake of justice, and the rights of other persons depend upon its exercise, the obligation to make the set-off in a proper case is imperative, and must be enforced by courts of justice. 1 *Salk.* 609; 3 *Atk.* 311; 5 *John. Ch. R.* 112." This doctrine has been followed consistently since that early day and has never been whittled away or modified.

In the case of *Shields* v. *John Shields Construction Co.*, 83 *N. J. Eq.* 21, 23, Vice-Chancellor Stevens said: "The Court of Errors and Appeals has very recently, in the case of *Butler* v. *Commonwealth Tobacco Co.*, 74 *N. J. Eq.* 423, held that our statute, in so far as it deals with insolvent corporations, is essentially a bankrupt act and that its provisions should be construed accordingly. The Bankrupt act [section 68] provides that 'in all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor, the account shall be stated and one debt shall be set off against the other and the balance only shall be allowed or paid.' The act not only uses the expression 'mutual debts' but the broader phrase 'mutual credits.' The expression in our Corporation act, 'mutual dealings' is, as Judge Elmer points out, broad enough to include them both. It is well settled that in bankruptcy proceedings debts not yet due are the subject of set-off. * * * The uniform current of authority in the District and Circuit Courts of the United States and * * * in the Supreme Court, is to the effect that as unmatured claims are provable against the bankrupt's estate, they are necessarily the subject of set-off under the provisions of section 68 of the Bankrupt act. Not only does our act respecting insolvent corporations say that set-off is allowable where the dealings are mutual but, like the Bankrupt act, in section 86, it declares that 'the creditors shall be entitled to distribution on debts not due, making in such case a rebate of interest when interest is not accruing on the same.' For the purpose of the winding up proceedings this section matures the debt at the time of the receiver's appointment. As soon as he is appointed claims become provable. As our act has been held by the Court of Errors and Appeals to be a bankruptcy act and as it contains provisions certainly as broad as the Federal Bankruptcy act, there is every reason why the decisions of the federal courts should be followed. Uniformity in this regard is as desirable as it is in other cases where the state and federal courts exercise a concurrent or at least a very similar jurisdiction." See, also, *Nutz* v. *A. W. Crone & Sons*, 109 *N. J. Eq.* 95 (at *p.* 98).

In the case of an insolvent bank, bank deposits of a debtor may be set-off against his indebtedness to the bank. *Roseville Tr. Co.* v. *Barney,* 89 *N. J. L.* 550; *Singac Trust Co.* v. *Totowa Lumber and Supply Co. el al.,* 112 *Id.* 99.

Turning therefore to the several items set up by way of counter-claim, the first item, that of unearned premiums, is a proper set-off. The insurance company had received the defendant's money for premiums on these several policies. Prior to the insolvency the assured might have had his money back, *i. e.,* the unearned part of such premium money, by tendering the policies for cancellation. Such a set-off should have been allowed.

As to the second and third items, where the assured had been compelled to pay out moneys for damages that arose during the period of the coverage of the policy, these items, too, are provable and should not have been struck out by the trial court.

The fourth and fifth items set up in the separate defenses and counter-claim embrace claims for alleged damages that arose during the period of the coverage of the policies. Mere inspection discloses that they are not actual or presently provable losses. They are not liquidated. They may be meritorious or they may not be. The claimant may not be successful in the action, but be that as it may, suffice it to say they were properly struck out because on their face they were incapable of being ascertained definitely by arithmetical calculation.

In the administration of such insolvent estates the counter-claim of a debtor of the insolvent corporation is entitled to the same consideration against the demand of a receiver or assignee that it possessed against the demand of principal before insolvency so long as the debt and counter-debt be mutual. Credits of an insolvent company, in cases like the present, are not changed in condition because they come into the hands of a receiver but are subject to the same equities as when in the hands of the company prior to the plight of insolvency. Any other rule would be a denial of commutative justice. *Receivers* v. *Paterson Gas Light Co., supra.*

The first three items of the counter-claim therefore should

have been allowed as a proper set-off. The remaining two, because unliquidated on their face and presently unprovable, were properly struck out.

The judgment will be reversed accordingly and since appellant and respondent have each been partially successful, no costs will be allowed.

*For affirmance in part*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 15.

*For reversal in part*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 15.