[Civ. No. 17605. Second Dist., Div. Three. Feb. 16, 1951.]

WALLACE K. DOWNEY, as Insurance Commissioner, etc., Appellant, v. THOMAS V. HUMPHREYS, Respondent.

Fred N. Howser, Attorney General, and Walter L. Bowers, Assistant Attorney General, for Appellant.

Betts, Ely & Loomis for Respondent.

VALLÉE, J.—Appeal by plaintiff as liquidator of insurance companies from a judgment of nonsuit in an action against an agent to recover unremitted insurance premiums.

Independence Indemnity Company, a Pennsylvania corporation (referred to as Independence), for some time prior to November 1, 1931, Public Indemnity Company, a New Jersey corporation (referred to as Public), for some time prior

to December 31, 1932, and International Reinsurance Corporation, a Delaware corporation (referred to as International), for some time prior to April 19, 1933, had been engaged in the insurance business in California. Defendant became general agent in California of Independence prior to 1929, of Public July 1, 1929, and of International about November 1, 1931.

The complaint alleged, and the answer admitted, that prior to April 19, 1933, all the assets and liabilities of Independence and Public were transferred to and assumed by International.

About November 1, 1931 (the exact date is not definitely fixed, but it is not material), Independence was "taken over" by International; that is, International acquired all of its assets and assumed all of its liabilities. Independence then ceased to function as a corporation. Thereafter International designated its Independence policies as "Independence Indemnity Underwriters, Division of International Reinsurance Corporation," and all business that had been and was thereafter written was the business of International. Defendant did not continue as agent of Independence after it was "taken over" by International; he dealt solely with International and was its general agent with respect to its Independence business.

On December 31, 1932, International "took over" Public; it acquired all of its assets and assumed all of its liabilities. Public then ceased to function as a corporation. Thereafter International designated its Public policies as "Public Indemnity Underwriters, Division of International Reinsurance Corporation," and all business that had been and was thereafter written was the business of International. After International "took over" Public, the latter's business was handled by International's method of doing business without regard to Public's contracts. Defendant did not continue as general agent of Public after it was "taken over" by International; he dealt solely with International with respect to the business of Public; he was general agent of International with respect to its Public division; and he was under the jurisdiction of the Pacific Coast manager of International.

There was evidence that on July 1, 1929, defendant entered into a written general agency contract with Public which provided in part: "The General Agent shall collect and will be responsible for the payment of the premium on any policy, contract of insurance or suretyship, or renewal thereof issued by, through or on account of his agency, whether through

agents, subagents, brokers, or otherwise, and all premiums, monies, securities, chattels or other property of whatever kind, received or collected by said General Agent shall be securely and honestly held by him subject to the instructions of the Company and while so held shall constitute a Fiduciary Trust to be used by the General Agent for no personal or other purpose inconsistent with such trust."

The original contract was not produced. A copy which did not bear defendant's signature was introduced in evidence. One witness testified that defendant had signed the original. There was much evidence that defendant did not have a written contract with Public; that the arrangement was oral and that defendant would not and did not sign the original of the copy produced. As this is an appeal from a judgment of nonsuit, we must give plaintiff the benefit of the evidence which tends to sustain his averments, and assume that during the time he was general agent for Public—that is, until December 31, 1932,—defendant was working under the written contract. Mr. Dempsey, who was Pacific Coast manager of Independence until it was "taken over" by International, and vice-president and Pacific Coast manager of International thereafter, testified that after Public was "taken over" by International on December 31, 1932, regardless of how Public had handled its business, he merged it with International and handled it his own way; that he did not know how Public handled it; that he handled it "without regard to Public's contracts or even looking to see if there were any."

There was no evidence that defendant ever entered into a written contract with Independence or with International. The uncontradicted evidence was that he did not. Mr. Dempsey testified that at all times his (International's) arrangements with defendant were oral.

Defendant reported monthly—to Independence until it was "taken over" by International, thereafter to International with respect to Independence business, to Public until it was "taken over" by International, thereafter to International with respect to Public business—on what is called a "bordereau" or "account current," showing business written, premiums due, premiums collected, commissions allowable, unearned premiums, debits and credits, and net. He remitted to the companies between the 15th and 25th of the third month following the month in which the business was written. The amount due the companies from defendant was the premiums collected, less unearned premiums, less his commission.

The companies "did not care" where defendant "got the money as long as he paid the premium on policies written"; nor did they look to the policyholders for payment; they looked only to defendant. They required defendant to pay the premiums on insurance written if it was in effect 60 days; "didn't care whether he collected it [them] or not"; "depended on Mr. Thomas Humphreys for payment of the amount owing to the company, regardless of who the policy holders were, or when they paid"; the companies "depended upon the credit of Mr. Humphreys, and not upon anything else." If he extended credit to policyholders "that was his business." Mr. Dempsey testified that he did not consider money collected by defendant on policies "as a trust account."

An unearned premium is that portion of a premium which has not been earned by reason of the fact that the policy has been cancelled; it is the premium for the unexpired term of the policy. When a policyholder cancelled a policy he looked to defendant for the unearned premium. The understanding and the course of business between the companies and defendant was that if there was a cancellation of a policy after a premium had been paid the policyholder would get back all of the unearned premium from defendant and the companies would credit him with the amount.

Defendant did not, and he was not required to, segregate the premiums collected on behalf of any of the companies (he was general agent for more than 20 insurance companies) in a separate account or as trust funds. With the knowledge and consent of the companies, he deposited premiums collected from all companies he represented and his personal funds in his general commercial account, and paid money owing to the companies from that account. Bills sent to policyholders were sent on defendant's billheads, without the name of any insurance company.

In March, 1933, because of rumors as to the financial instability of International, defendant told Mr. Dempsey, "I think the company is going to blow." Dempsey replied, "I'll tell you what you do: We will know this in a little while. You can hold back the December premiums. . . . It will give you just that much more money to replace if they do blow, but I don't think they are going to."

On April 19, 1933, International was adjudged insolvent and receivers were appointed by the Court of Chancery, County of New Castle, Delaware. The record is not at all clear, but apparently on the same day a receiver of Inter-

national was appointed by the Superior Court of the County of Los Angeles and a temporary restraining order issued restraining International and its attorneys, agents and employees from transacting any further business. The order was served on a vice-president of International on April 20, 1933. It was not served on defendant. He did not learn of the appointment of the receiver until some time in May, 1933. The uncontradicted evidence was that he did not hear of the restraining order. On June 28, 1933, plaintiff was appointed liquidator of International by the Superior Court of the County of Los Angeles, and on July 24, 1933, of Independence and Public by the Superior Court of the City and County of San Francisco.

Prior to April 19, 1933, defendant had issued a number of policies of insurance in International, Independence and Public and had collected $13,539.94 in premiums from such policyholders which he did not remit. Prior to April 19, 1933, he issued a number of policies in these companies and after April 19, 1933, collected $5,177.51, premiums on the policies which he did not remit.

On April 19, 1933, defendant learned of the appointment of the receivers in Delaware. He testified that he did not do any further business for International. On the same day, he replaced all of the existing policies which he had written in International, Independence, and Public by getting other companies "to accept the coverage blanket" and within 15 days wrote new policies. He used the $13,539.94 which he had on hand on April 19, 1933, and the $5,177.51 which he collected thereafter, in replacing the insurance. In addition to these moneys, he used $6,000 of his own funds in purchasing the new policies. The money which he used to replace the insurance, other than that contributed from his personal funds, was unearned premiums which he had received on policies that had been written about three or four months before that time.

On May 15, 1933, defendant received a notice from the Delaware receivers suggesting "that all insurance be replaced in other companies at the earliest possible date."[1]

---

[1] "To agents of International Re-Insurance Corporation, including Independence Division and American Mine Owners Division.

"The International Re-Insurance Corporation was placed in the hands of the undersigned as Receivers under an Order of the Court of Chancery of the State of Delaware in and for New Castle County, dated April 19, 1933.

"This affects policies issued by: International Re-Insurance Corpo-

The action is by the liquidator to recover the $18,717.45 ($13,539.94 plus $5,177.51), which defendant did not remit. A jury was empaneled to try the cause.

Plaintiff, in proving his case, established that on April 19, 1933, defendant had in his possession unearned premiums in the amount of $24,944.35. In his answer defendant alleged that he was authorized and entitled to and did offset these moneys against moneys due by him. Plaintiff's proof showed that on April 19, 1933, $18,717.45 was due from defendant to International, and that after setting off the unearned premiums of $24,944.35, there was a balance due defendant of $6,226,90. Defendant did not press his claim for the balance in this action.

The trial court concluded that there was no evidence that defendant ''occupied the status of trustee'' on April 19, 1933; that the evidence showed without conflict that the relationship was that of debtor and creditor; that defendant was the creditor on that date; and that he had a right to offset unearned premiums in the amount of $24,944.35 against plaintiff's claim of $18,717.45.

Plaintiff's position at the trial was: ''It is our position that the thirteen thousand-odd dollars collected prior to April 19th, a good part of it was unearned and it is returnable to the policy holders, yes. But the policy holder, he has a claim against the company and not against Mr. Humphreys. He is entitled to file a claim and to share on the same basis as every other claimant. That is our position. So it makes no difference whether or not the thirteen thousand-odd dollars is earned or unearned so far as Mr. Humphreys is concerned, because it is the liquidator who is supposed to pay the claimant and not Mr. Humphreys. That is our position in this throughout. As far as the $5,100 is concerned, we are entitled only

ration; Independence Indemnity Company; Public Indemnity Company; and Underwriters Casualty Company.

''That the appointment was made due to the fact that the Corporation was insolvent in that it was unable to meet its current and maturing obligations; that by the appointment of said Receivers the liability of International Re-Insurance Corporation upon all of its policy contracts and reinsurance or assumption agreements was terminated as of the 19th day of April, 1933. It is, therefore, suggested that all insurance be replaced in other companies at the earliest possible date.

"We are giving this information to you in order that you may be advised and act for the best interests of yourself and customers. It must be understood that no expense can be incurred for the account of the Receivers in replacing any insurance as the Receivers cannot take any steps to replace the insurance or provide any funds for such replacement."

to that amount which is earned. If any part of it was unearned, we are not entitled to that." In answer to the court's inquiry, he also stated: "THE COURT: . . . Here is Independence Indemnity and Public Indemnity. Are they distinguishable from International, or does International just absorb both of those? MR. DOHERTY: [Counsel for plaintiff] International, as we understand it—and I think Mr. Betts agrees—absorbed both. Independence was carried as the Independence Indemnity Division of International, but Public was absorbed entirely, if I understand the situation." The statement was correct. (See *In re International Reinsurance Corp.*, 271 N. Y. 381 [3 N.E.2d 518, 519].)

Plaintiff here contends that the relationship between defendant and the companies was that of trustee and beneficiary; that the moneys sued for belonged to the liquidator; that the defendant did not have a right of offset; and that the evidence of defendant's liability was sufficient to require denial of the motion for judgment of nonsuit. Defendant contends that the evidence, giving plaintiff the benefit of every reasonable inference therefrom, shows without conflict that on April 19, 1933, he was agent of International only; that the relationship was that of debtor and creditor; and that he had a right of offset.

■ The adjudication of the insolvency of International on April 19, 1933, operated as a breach of its policies (including those of Independence and Public) with its insured. (*Garrison* v. *Edward Brown & Sons*, 25 Cal.2d 473, 482, 483 [154 P.2d 377].) ■ The proceeding in which receivers of International were appointed in Delaware did not work a dissolution of, nor was it for the purpose of liquidating, the corporation. (*In re International Reinsurance Corp.*, —— Del.Ch. —— [48 A.2d 529, 539].) It was not until June 28, 1933, that an order was made in California for its liquidation. Only upon the entry of the order directing its liquidation did International's liabilities to its creditors and claims against its debtors becomes fixed. (*Garrison* v. *Edward Brown & Sons, supra*, 25 Cal.2d 473, 482.)

■ If the relationship of defendant to International on April 19, 1933, was that of trustee and beneficiary, defendant would not be permitted to set off unearned premiums, for a fiduciary cannot set off claims owed by him in his personal capacity against obligations that he assumes as a trustee. If defendant was trustee of the premiums collected, he would be obligated to remit them, deducting only commis-

sions earned thereon. (*Garrison* v. *Edward Brown & Sons, supra,* 25 Cal.2d 473, 477; *Garrison* v. *Edward Brown & Sons,* 28 Cal.2d 28, 32 [168 P.2d 153].) If, however, the relationship of defendant to International on April 19, 1933, was that of debtor and creditor, his only obligation with respect to premiums received by him on policies of International (including those of Independence and Public) was to pay the liquidator after his appointment on June 28, 1933, the balance due International after crediting himself with commissions on earned premiums and with unearned premiums after cancellation of policies. In *Garrison* v. *Edward Brown & Sons, supra,* 28 Cal.2d 28, the court said, page 32: "That result [whether deductions could be made from premiums due the company] depended on the character of the fund representing the collected premiums, that is, whether that fund was held by the defendant as fiduciary under the agreement, or in a debtor-creditor relationship pursuant to the claimed modification of the original agreement."

A debtor is one who, by reason of an existing obligation, is or may become liable to pay money to another, whether such liability is certain or contingent. (Civ. Code, § 3429.) A creditor is one in whose favor an obligation exists, by reason of which he is, or may become, entitled to the payment of money. (Civ. Code, § 3430.) █ A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such. █ If a person receives money and it is the intention that he shall have the unrestricted use thereof, being liable to pay a similar amount to a third person, a debt is created. (Rest. Trusts, § 12, comments b, g; *Preston & McKinnon* v. *Brennan,* 135 Cal. 55 [66 P. 981].) █ If funds held by an agent are commingled with the knowledge and consent of his principal, in the absence of an agreement to the contrary, the inference is that the agent becomes a debtor to the amount received for the principal. (Rest. Agency, § 398, comment c. See, also, *Id.* § 72, comment e.) There was no evidence from which an inference could be drawn that after Independence and Public were "absorbed" by International the relationship between International and defendant was that of trustee and beneficiary. As will appear, the relationship was that of debtor and creditor.

█ The evidence is without conflict that Independence was "absorbed" by International about November 1, 1931, and that thereafter defendant was the agent of International as to all business of Independence. The evidence is also with-

out conflict that Public was "absorbed" by International on December 31, 1932. There is no evidence that after International "took over" Public defendant continued with International under the written contract he had had with Public. The evidence is without conflict that after December 31, 1932, defendant was the agent of International as to all business of Public, not under the former contract, but under an oral understanding between International and himself. On April 19, 1933, defendant was the agent of International only. The evidence is uncontradicted that from December 31, 1932, there was but one company—International—doing business with defendant; that there was no written contract between International and defendant; that Mr. Dempsey, in complete charge of Independence's former business, of Public's former business, and of International's business, did not know how Public handled its business, and that he did business with defendant without regard to or knowledge of Public's written contract, and solely on the oral understanding between himself and defendant. Again the evidence is uncontradicted that defendant was obligated to return unearned premiums to policyholders in case of cancellation of policies, and that with the approval of the companies he at all times made such payments. Under the oral understanding between International and defendant, the latter was bound to remit between the 15th and 25th of the third month the amount due from policyholders on business written by him which had been in effect 60 days whether received by him or not. At the time the policies were issued the amount due was the full premium. The defendant, however, was given time within which to make payments to International. Under the understanding, the amounts to be paid to International by defendant, on cancellation of policies, were the earned premiums and not the unearned premiums. It is clear that if policies were cancelled in the ordinary course of business, defendant was credited with unearned premiums and was not liable therefor, and that the understanding, and the only understanding, between International and defendant was that their cross-claims should mutually compensate each other. International looked to the credit of defendant alone. The earned premiums, whether collected by defendant or not, were debts due from defendant to International. International's relationship with defendant under their agreement was, therefore, that of debtor and creditor. (*Wallace* v. *American Life Ins. Co.*, 116 Ore. 195 [237 P. 974, 976]; *Rhode Island Mut. Liability Ins. Co.* v.

*Pierce* (R.I.) 171 A. 243; *Horton* v. *Eagle Indemnity Ins. Co.*, 86 N.H. 472 [171 A. 322], in which it was said, page 325 [171 A.] : "When the insurer has taken the agent's credit as payment for the premium, the effect of the statute is to entitle the agent to credit with the insurer for the amount of the return [unearned] premium"; *Kelly* v. *American Mine Owners' Casualty Corp.*, 161 Va. 206 [170 S.E. 580].)

Plaintiff argues that there is evidence of a written contract between Independence and defendant because defendant, on May 22, 1933, filed an action to collect the premium on a policy which he alleged had been written by him as general agent for Independence, for which he became liable to Independence in accordance with the general agency contract between himself and Independence. The inference sought to be drawn from the existence of a written contract is that a fiduciary relationship existed between Independence and defendant. The suit was on a policy which had been cancelled on March 29, 1933. The allegation does not say that there was a written contract. The fact alleged does not establish either that there was a written contract with Independence or with International, nor is it evidence of the relationship between International and defendant on April 19, 1933.

Plaintiff relies on asserted admissions in defendant's answer in the present case and allegations of the complaints in two actions brought by defendant to recover earned premiums as evidence that Independence and Public continued to do business after they were taken over by International. We find nothing in these pleadings inconsistent with the uncontradicted evidence that after Independence and Public were "taken over" their business was that of International. Plaintiff overlooks the fact that he alleged that prior to April 19, 1933, "all of the assets and liabilities of" Independence and Public "were transferred to and assumed by International," and that he repeatedly represented to the trial court that prior to that date Independence and Public had been "absorbed" by International. He cannot here contend otherwise.

It is suggested that because in 1933 Penal Code, section 506(b) provided: "An insurance agent . . . who . . . with the intention to fraudulently convert to his own use . . . appropriates, or otherwise uses or applies any money . . . received by him as such agent . . . contrary to the instructions or without the consent of the company . . . shall be guilty of embezzlement," it must be held that respondent was

acting in a fiduciary capacity. The section is not relevant. There is no evidence that respondent acted "contrary to the instructions or without the consent of the company." The evidence is to the contrary.

As a general rule, the powers of an agent of an insurance company are governed by the general law of agency.

A general agent possesses such powers as have been conferred by the company. (*Frasch* v. *London & Lankershire F. Ins. Co.*, 213 Cal. 219, 223 [2 P.2d 147].) Any lawful claims of an agent arising out of the agency by way of reimbursement, compensation, or interest may generally be deducted by the agent from the principal's claim in rendering an account. (*Arnold* v. *San Ramon Valley Bank*, 184 Cal. 632, 635 [194 P. 1012, 13 A.L.R. 320]; *Denny* v. *Scoonover*, 93 Ind.App. 118 [153 N.E. 779] (where the facts are similar to those in the present case); *Wallace* v. *American Life Ins. Co.*, 116 Ore. 195 [237 P. 974, 976]; *J. L. Riley & Co.* v. *London Guaranty & Acc. Co.*, 27 Ga.App. 686 [109 S.E. 676, 677]; 3 C.J.S. 59, § 168.) A general agent is not required to account to the insurer for unearned premiums collected by the agent after cancellation of the policies by an adjudication of the insurer's insolvency where the agent replaced such insurance in other companies. (*Union Mut. Casualty Ins. Corp.* v. *Insurance Budget Plan*, 291 Mass. 62 [195 N.E. 903, 98 A.L.R. 1422]; *German-American Ins. Co.* v. *Tribble & Pratt*, 86 Mo.App. 546, 554.) "There can be no dissent from the doctrine that one who owes money to another on a written or other contract may meet its demands by setting off counter-obligations arising on contract and existing in his own favor." (*Automobile etc. Co.* v. *Salladay*, 55 Cal.App. 219, 226 [203 P. 163]. See Code Civ. Proc., § 440.) The debits and credits of a mutual account constitute cross-demands which are deemed to compensate each other. (*Hart* v. *Cooper*, 47 Cal. 77; *Jones* v. *Mortimer*, 28 Cal.2d 627 [170 P.2d 893].)

At the time International was adjudicated insolvent, April 19, 1933, and at the time the liquidator was appointed, June 28, 1933, the statute providing for proceedings against delinquent insurance companies was silent as to the right of setoff. (Stats. 1919, p. 265, as amended Stats. 1933, p. 1420.) In 1935 the statute was amended to provide for setoff of mutual debts and mutual credits. (Stats. 1935, p. 544.) The statute was based on the New York law and was but the enactment of the prevailing rule. (*New York Title & M. Co.* v. *Irving Trust Co.*, 241 App.Div. 246 [271 N.Y.S. 775, 778];

*Commonwealth* v. *Shoe & Leather Dealers' F. & M. Ins. Co.*, 112 Mass. 131, 135; *Newman* v. *Hatfield Wire & Cable Co.*, 113 N.J.L. 484 [174 A. 491, 494].) The Bankruptcy Act provides for a setoff of mutual debts and mutual credits. (11 U.S.C.A. § 108.)

A receiver occupies no better position than that which was occupied by the party for whom he acts. "He takes the property and rights of the one for whom he was appointed precisely in the same condition and subject to the same equities as existed before his appointment and any defense good against the original party is good against the receiver." (*People* v *California etc. Trust Co.*, 168 Cal. 241, 246 [141 P. 1181, L.R.A. 1918A 299].) Choses in action pass to a receiver of an insolvent subject to any right of setoff. It is well settled that the insolvency of a party against whom a setoff is claimed constitutes a sufficient ground for the allowance of a setoff not otherwise available. The right is to be determined by the condition of things as they existed at the moment the party was adjudged insolvent. If the right of setoff was available to defendant at that time the insolvency of International did not defeat it. (*People* v. *California etc. Trust Co.*, 168 Cal. 241, 246, 250 [141 P. 1181, L.R.A. 1918A 299]; *Machado* v. *Borges*, 170 Cal. 501 [150 P. 351]; *In re Bank of San Pedro*, 11 Cal.2d 313, 315, 316 [79 P.2d 1057]; *Pendleton* v. *Hellman Com. etc. Bank*, 58 Cal.App. 448 [208 P. 702]; *City Investment Co.* v. *Pringle*, 73 Cal. App. 782, 789-792 [239 P. 302]; *Henderson* v. *Electric Loop Land Co.*, 96 Cal. App. 576, 581, 583-587 [274 P. 445]; 22 Cal.Jur. 437, § 14, et seq.) The fact that the policyholders received their unearned premiums did not create an unlawful preference. (*Scott* v. *Armstrong*, 146 U.S. 499, 511 [13 S.Ct. 148, 36 L.Ed. 1059, 1063]; *New York Title & M. Co.* v. *Irving Trust Co.*, 241 App.Div. 246 [271 N.Y.S. 775, 778].)

In the following cases a setoff of unearned premiums was allowed against an insolvent company or its receiver or liquidator. (*Carr* v. *Hamilton*, 129 U.S. 252 [9 S.Ct. 295, 32 L.Ed. 669]; *Scott* v. *Armstrong*, 146 U.S. 499 [13 S.Ct. 148, 36 L.Ed. 1059]; *Smith* v. *Binder*, 75 Ill. 492 (held insured had action against agent for unearned premiums); *Franzen* v. *Hutchinson*, 94 Iowa 95 [62 N.W. 698, 699]; *Smith* v. *National Credit Ins. Co.*, 65 Minn. 283 [68 N.W. 28, 33 L.R.A. 511]; *Newman* v. *Hatfield Wire & Cable Co.*, 113 N.J.L. 484 [174 A. 491, 494]; *Johnson* v. *Button*, 120 Va. 339 [91 S.E. 151], in which, quoting from 22 Cyc. 1404, it was said, p. 153 [91

S.E.] : "A company cannot recover premiums for the portion of the term of insurance after insolvency has taken place. Nor can it maintain an action against an agent for the recovery of premiums received by him, the consideration for which has thus failed." See *New York Title & Mortgage Co.* v. *Irving Trust Co.*, 268 N.Y. 547 [198 N.E. 397], and same case below, 241 App.Div. 246 [271 N.Y.S. 775]. See, also, 44 C.J.S. 758, § 134(g).

 On April 19 ,1933, defendant had a legal right to set off unearned premiums against the amount he owed International. The fact that a receiver of International had been appointed did not affect that right. The unearned premiums belonged to the policyholders. Neither the receiver nor the liquidator had any better right than International, upon its adjudication as insolvent, to the unearned premiums, and International had none. The domiciliary receivers approved the action of defendant in replacing the insurance. Replacing the insurance and the setoff had been effected before plaintiff's appointment as liquidator. Plaintiff had no rights until the date of his appointment, June 28, 1933. It was on that date that his rights and powers became fixed. (*Garrison* v. *Edward Brown & Sons, supra,* 25 Cal.2d 473, 482.) Plaintiff had no rights retroactively. In the Garrison case (25 Cal.2d 483) the court said: "*After the appointment of a liquidator,* who may take possession of all assets of the insolvent insurance company, it was the duty of the agent to remit funds in his hands to the liquidator for the purposes of liquidation." (Italics added.)

 Disregarding conflicting evidence, giving plaintiff's evidence all the value to which it was legally entitled, and indulging in every legitimate inference which may be drawn from that evidence, the trial court was justified in finding, as a matter of law, that there was no evidence of sufficient substantiality to support a verdict in favor of plaintiff.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.