**In re Estate of** Santiago C. Tudela,
Deceased.
Appeal Nos. 92-010 & 92-011
Civil Action No. 86-0844
June 16, 1993

Argued and Submitted May 6, 1993

Counsel for appellant Maria Haruko Tudela: Paul A. Lawlor, Saipan (Lawlor & Zamsky).

Counsel for appellants Connie Pangelinan, et al.: Douglas Cushnie, Saipan.

Counsel for appellee Loriebell A. Tudela: F. Randall Cunliffe, Saipan.

BEFORE: VILLAGOMEZ and ATALIG, Justices, and BELLAS, Special Judge.

ATALIG, Justice:

The appellants, the wife and nieces and nephews of Santiago C. Tudela, deceased ("Santiago"), appeal a probate court order in which Loriebell Avelino Tudela ("Loriebell") was found to be Santiago's child and a decree of final distribution in which Loriebell received all the real and one-half of the personal property in Santiago's estate. We conclude that the probate court improperly applied the presumption of paternity under the Uniform Parentage Act ("UPA") to the probate proceedings in determining whether Loriebell was an heir of Santiago. Additionally, we hold that claims of ownership in specific land in a decedent's estate are not "claims" for purposes of 8 CMC § 2924. Finally, we will not address whether the application and operation of 8 CMC §§ 2411, 2601 and 2902 of the probate code are unconstitutional because it is not necessary for the resolution of this appeal.

## ISSUES AND STANDARD OF REVIEW

 Among the issues raised on appeal are:[1]

I. Whether the UPA applies to determine paternity issues in probate proceedings.

II. Whether on their face, or by their application to a surviving spouse not of Northern Marianas descent, 8 CMC §§ 2411, 2601 and 2902 violate Article XII of the NMI Constitution.

III. Whether 8 CMC § 2924(b) applies to either a claim of ownership of land included in the inventory of an estate or a claim of paternity in probate proceedings.

The first issue involves the construction and application of a statute and is reviewed de novo. *In re Estate of Deleon Guerrero*, 3 N.M.I. 253, 259 n.3 (1992). The second issue raises a constitutional question and is subject to de novo review.[2] The third issue is a question of law

---

[1] The appellee, Loriebell, also asserts, in the statement of jurisdiction in her opening brief, that this Court is without jurisdiction to consider the appellants' appeals from the July 13, 1988 order. *See* Appellee's Opening Brief. Pursuant to a December 7, 1992, order of this Court, *In re Estate of Tudela*, App. No. 92-009 (Order Denying Motion to Dismiss), we already found that we had appellate jurisdiction, as "[t]he decision of whether an order, which is appealable pursuant to 8 CMC § 2206, should be appealed immediately, or after entry of the final decree of distribution (provided proper objections are made), is one properly left to the discretion of the parties." *Tudela, supra*, order at 4. The appellants also argue that Loriebell's paternity claim should have been brought in a separate paternity action. This issue is one that is subsumed by that of whether or not the UPA is applicable in probate proceedings.

[2] A question of whether the application of a statute is constitutional is reviewed de novo. *Cf. Commonwealth v. Peters*, 1 N.M.I. 466, 470 (1991).

2

subject to de novo review as well. *See, e.g., Sablan v. Iginoef*, 1 N.M.I. 190, 197 (1990), *appeal dismissed sub nom., Sablan v. Manglona*, 938 F.2d 970 (9th Cir. 1991); *In re Estate of Mueilemar*, 1 N.M.I. 441, 444 (1990).

## FACTUAL AND PROCEDURAL BACKGROUND

The appellants are Maria Haruko Tudela ("Maria"), the wife of Santiago, Francisco S. Pangelinan ("Francisco"), and Santiago's nieces and nephews, Connie P. Pangelinan ("Connie"), Donicio T. Palacios, Herman T. Palacios, Augustin T. Palacios, Rosario T. Palacios, and Susan P. Schwartz.

Santiago, a person of Northern Mariana Islands ("NMI") descent, and Bella Avelino Tudela ("Bella"), not of NMI descent, were married on February 28, 1985. Bella became pregnant during the marriage. Santiago filed for divorce on November 22, 1985. They signed a marital settlement agreement in which Bella not only admitted that she engaged in adultery but that Santiago was not the father of her then unborn child. The court granted the divorce on December 23, 1985, and incorporated the marital settlement agreement into the divorce decree. On June 6, 1986, Bella gave birth to Loriebell on Guam.

Santiago and Maria were married on November 13, 1986. Five days later, on November 18, 1986, Santiago died intestate. The marriage produced no children. On November 24, 1986, Maria initiated the probate of Santiago's estate, petitioning for letters of administration. The petition was granted on March 16, 1987. On April 24, 1987, through her counsel, Loriebell filed a "Notice of Heir" in the probate action alleging that she was Bella and Santiago's child. On August 13, 1987, Maria filed an inventory of the estate. The following day she filed a petition for final distribution.

On June 22, 1988, Bella, acting as guardian for Loriebell, filed a motion for declaratory judgment on the paternity issue,[3] to which the appellants filed their opposition. On July 13, 1988, the court granted Bella's motion, finding that: (1) Maria and the nieces and nephews had no standing to dispute the father-child

relationship between Loriebell and Santiago under 8 CMC § 1706(a) of the UPA;[4] and (2) Loriebell was Santiago's issue and was, therefore, entitled to share in his estate. *See In re Estate of Tudela*, Civ. No. 86-0884 (N.M.I. Super. Ct. July 13, 1988) (Declaratory Decree and Order). That determination was based on a presumption of paternity pursuant to 8 CMC § 1704 of the UPA. Declaratory Decree and Order, *supra*, at 4-5.

On July 27, 1990, and September 18, 1990, Maria filed amended inventories and petitions for final distribution, which included both personal and real property. The real property consisted of five parcels: (1) Tract 22905-3 containing 1,943 square meters; (2) Lot 1877-1-R1 containing 6,574 square meters; (3) a 10,002 square meter portion of Lot 003 C 06; (4) an agricultural homestead of 40,001 square meters; and (5) a 10,000 square meter portion of Lot 001 C 11. *Tudela, supra* (May 22, 1992) (Order at 2-3). On September 27, 1990, the court substituted Rexford Kosack for Maria as administrator of the estate. He filed a petition for final distribution on February 24, 1992. On March 9, 1992, Connie and Francisco filed an objection in which they asserted that they each owned a parcel of land included in the inventory. On May 22, 1992, the court distributed Santiago's estate.

The probate court concluded that Connie and Francisco's claims of ownership to specific parcels of land included in the estate were barred for failure to file a creditor's claim against the estate within sixty days of first notice to the creditors, as required by 8 CMC § 2924. Order, *supra*, at 6. In addition, the probate court found three sections of the probate code, 8 CMC §§ 2411, 2601 and 2902, unconstitutional either on their face or by their application, as they violated Article XII of the CNMI Constitution.

First, the court found that 8 CMC § 2411 was an improper legislative attempt to transform an unconstitutional acquisition of a long-term interest in land by a person not of NMI descent. Order, *supra*, at 9. Second, the court found the application of 8 CMC § 2601 to non-NMI surviving spouses unconstitutional, as it improperly allowed the transfer of a family home to a person of non-NMI descent, in violation of Article XII (where there are children of the decedent). Order, *supra*, at 11. Finally, the court found 8 CMC § 2902 unconstitutional in its application to a non-NMI spouse, as it allowed the spouse of a decedent to obtain a life estate in ancestral land, with the children taking a vested remainder in fee simple, contrary to Article XII. Order, *supra*, at 12-13. Pursu-

---

[3] The court entertained this motion notwithstanding the court appointment, on January 18, 1988, of Jane Mack as Loriebell's guardian ad litem. The court also set a hearing for the determination of paternity pursuant to 8 CMC § 1710 of the UPA, and gave the administratrix or any potential heirs of Santiago the opportunity to have blood tests done, pursuant to the UPA.

[4] Pursuant to 8 CMC § 1706 of the UPA, only the presumed father, natural mother and child may present evidence regarding paternity.

ant to its decree and order, the court divided the personal property equally between Maria and Loriebell. As the court concluded that Maria could not receive any interest in the land under Article XII, all the lands were distributed to Loriebell.

## ANALYSIS

### I. Whether the UPA Applies to Determine Paternity Issues in Probate Proceedings

 The appellants contend that the probate court improperly applied the presumption of paternity under the UPA,[5] and not 8 CMC § 2918 (determination of parentage for heirship purposes)[6] of the probate code. Loriebell argues that the appellants should be barred from arguing against the applicability of the UPA in the determination of paternity under the doctrine of invited error. We find Loriebell's argument to be without merit. The doctrine of invited error is applicable where an appellant has either failed to take exception to the court's rulings, see *Mach v. Abbott Co.*, 136 F.2d 7 (8th Cir. 1943), *cert. denied*, 320 U.S. 773, 64 S. Ct. 80, 88 L. Ed. 464 (1943) (cited in Appellee's Opening Brief) or

taken "a position on appellate review inconsistent with that [taken] in the trial court," *Graham v. Graham*, 252 P.2d 313, 316 (Wash. 1953) (cited in Appellee's Opening Brief). The record fails to show that this doctrine is applicable to the appellants. Additionally, we conclude that 8 CMC § 2918 of the probate code provides the appropriate means by which the trial court may determine if Loriebell is Santiago's child for purposes of intestate succession.[7]

 Under 8 CMC § 2202,[8] the probate court has wide discretion in probate proceedings to entertain any relevant matters that may come before it in a probate matter, and the court is specifically granted the authority to determine the heirs and successors of decedents. *See In re Estate of Rofag*, 2 N.M.I. 18 (1991) and *supra* note 8. Such authority of the court encompasses a wide variety of issues, see *Rofag*, *supra* (customary adoption), and *In re Estate of Deleon Guerrero*, 1 N.M.I. 301 (1990) (intestate succession under Chamorro custom), including paternity issues under intestate succession. *See In re Estate of Deleon Guerrero*, 3 N.M.I. 253 (1992) (hereinafter *Deleon Guerrero*). In probate proceedings, interested persons may participate in heirship determina-

---

[5] A man is presumed to be the natural father of a child if: . . . he and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by . . . divorce, or after a decree of separation is entered by a court . . . .

8 CMC § 1704(a)(1). Loriebell was born within 300 days of the date of the divorce decree. See *supra*, factual and procedural background.

[6] If, for the purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person:

. . . .

(b) In cases not covered by (a), above, a person born out of wedlock is a child of the mother. That person is also a child of the father, if:

. . . .

(2) the paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof . . . .

8 CMC § 2918.

[7] Loriebell is neither adopted, 8 CMC § 2918(a), nor of "natural parents" known, see 8 CMC § 2918(b)(1), which appears to presume that the identity of the natural father is known. Under 8 CMC § 2918(b)(2), a deceased father-child relationship is established by "clear and convincing proof." Loriebell argues that 8 CMC § 2918, by which the natural parent-child relationship for purposes of intestate succession is established, by its language does not apply to the instant matter, as Loriebell was neither adopted nor born out of wedlock. "Wedlock" simply means "[s]tate of marriage." BLACK'S LAW DICTIONARY 1594 (6th ed. 1990). Loriebell was born after the marriage was dissolved and Santiago and Bella were "restored . . . to the state of unmarried persons," 8 CMC § 1311, thirty days from the date of the divorce decree. *See* 8 CMC § 1103(a) (decree final upon expiration of period for appeal). Loriebell was born beyond thirty days from the date of the divorce decree, hence, Loriebell was born of an unmarried mother. Her argument to the contrary assumes that 8 CMC § 1704(a) of the UPA is applicable to the instant matter, an argument with which we disagree.

[8] To the full extent permitted by the Northern Mariana Islands Constitution and the Schedule on Transitional Matters, the Commonwealth Trial Court shall have jurisdiction over all subject matter relating to estates of decedents, including construction of wills and determination of heirs and successors of decedents.

8 CMC § 2202(a).

4

tions,[9] which may include the resolution of paternity issues.[10]

 In *Deleon Guerrero*, this Court addressed the applicability of the UPA to establish paternity in probate proceedings. We held that not only does the probate code provide the probate court with the means to establish paternity regarding intestate succession, *id.*, 3 N.M.I. at 260,[11] but that the establishment of paternity *after* the alleged father's death *must* be done within the purview of the probate code and not the UPA as well. The UPA "contemplates that the alleged father is still alive [and] will be made a party to the action or given notice of the action." *Id.*[12] As such, he could then rebut the presumption of paternity under 8 CMC § 1704.[13]

 Additionally, the UPA should not be used to circumvent the traditional disposition of land in the CNMI, traditions embodied in the underlying purposes and policies of the probate code. *See* 8 CMC § 2104(a). It is of great interest that the trial court, in its determination of the heirs of a decedent of NMI descent, ensure that the tradition of distributing land to sanguineous or adopted heirs is observed. Traditions and bloodline are not considered by the paternity presumption in the UPA.

## II. Whether on their Face, or by their Application to a Surviving Spouse not of Northern Marianas Descent, 8 CMC §§ 2411, 2601 and 2902 Violate Article XII of the NMI Constitution

 The trial court found 8 CMC § 2411[14] of the probate code unconstitutional as it improperly reformed a void transaction, and 8 CMC §§ 2601 and 2902[15] unconstitutional in their application to non-NMI surviving spouses in violation of N.M.I. Const. art. XII.[16] We note, however, that constitutional issues will not be considered by this Court unless necessary. *Marianas Pub. Land Trust v. Marianas Pub. Land Corp.*, 1 CR 974, 975 (N.M.I. Trial Ct. 1984).

 The determination of the constitutionality of these sections depends upon a factual issue which has not been determined below. The court failed to determine whether the properties are ancestral or not. It appears that the court presumed that the lands involved are ancestral; the court only briefly noted that the same constitutional analysis rendering 8 CMC § 2902 unconstitutional, as applied to non-NMI surviving spouses, applies to 8 CMC § 2903, which affords the surviving spouse one-half of all non-ancestral properties, as well.[17]

---

[9] The procedure for the determination of a decedent's heirs, the Commonwealth Rules of Probate Procedure, which govern the administration of wills and intestacy, see 8 CMC § 2923, mandates that the court take testimony from interested persons in determining parentage: "At the hearing, the Court *will* hear from petitioner and any heirs or other interested parties as to facilitate the appointment of an administrator and to determine the heirs of the decedent." Com. R. Prob. P. 17 (emphasis added).

[10] *In re Estate of Deleon Guerrero*, 3 N.M.I. 253, 260-61 (1992).

[11] "The Probate Code expressly permits the trial court to determine 'for purposes of intestate succession' whether one is an heir either through an adjudication made before the death of the father or an adjudication rendered after his death." *Id.*

[12] Contrary to Loriebell's argument, we find these cited passages in *Deleon Guerrero* to be holdings and not dicta.

[13] *See supra* note 5.

---

[14] Whenever a person not of Northern Marianas descent takes title to real property under this code, he or she shall take the maximum allowable legal interest in the real property and the remaining interest if any shall vest in the next closest heirs or devisees who can legally take title to the real property pursuant to Article 12 of the Commonwealth Constitution.

8 CMC § 2411.

[15] Eight CMC §§ 2601 and 2902 provide, respectively, that: (1) "[t]he surviving spouse of a decedent who was domiciled in the [NMI] is entitled to the primary family home and lot"; and (2) under Chamorro intestacy succession "[t]he surviving spouse obtains a life estate, with the issue obtaining a vested remainder in fee simple by representation."

[16] Article XII provides that "[t]he acquisition of permanent and long-term interests in real property within the Commonwealth shall be restricted to persons of [NMI] descent." N.M.I. Const. art. XII, § 1 (as amended 1985). An "acquisition" "includes acquisition by sale, lease, gift, inheritance or other means." *Id.* § 2. However, this term does *not* include "[a] transfer to a spouse by inheritance . . . if the owner dies without issue or with issue not eligible to own land in the [NMI]." *Id.* Section three provides that "[t]he term permanent and long-term interests in real property used in Section 1 includes freehold interests and leasehold interests of *more* than fifty-five years including renewal rights."

[17] Eight CMC § 2903 provides, in pertinent part:

(a) The surviving spouse obtains one-half of all properties, other than those listed in section 2902 of this chapter.
(b) The issue of the decedent obtain one-half of

5

Additionally, in light of our decision that the UPA is not applicable to this probate proceeding, the probate court must determine, pursuant to 8 CMC § 2918(b)(2), whether Loriebell is Santiago's issue. We are not free to determine these factual issues on review. *Cf. Deleon Guerrero*, 3 N.M.I. at 265. As such, the constitutional issues raised before us are not ripe.[18] *See Marianas Pub. Land Trust*, *supra*; *Duty Free Shoppers Ltd. v. Sablan*, 3 CR 623 (N.M.I. Trial Ct. 1989).[19]

## III. Whether 8 CMC § 2924(b) Applies to a Claim of Ownership of Land Included in the Inventory of an Estate or a Claim of Paternity in Probate Proceedings

■ The appellants Connie and Francisco contend that the probate court erred in applying 8 CMC § 2924(b)[20] to bar their claims of ownership in two parcels of land included in Santiago's estate. They further contend that, if applicable, Loriebell's claim against the deceased's estate should have been barred thereunder as well. We agree with the appellants and conclude that the term "creditor" in 8 CMC § 2924(b) does not include persons or entities claiming specific property in the estate of a decedent.

■ First, 8 CMC § 2924(b) applies to "creditors," a term which usually applies to pecuniary claims, compare *Downey v. Humphreys*, 227 P.2d 484, 490 (Cal. Dist. Ct. App. 1951),[21] and, as applied to probate proceedings, means "one to whom the decedent was indebted." *State ex rel. Gentry v. O'Byrne*, 46 N.E.2d 687, 690 (Ind. 1943). The term "creditor" does not apply to claims of ownership of specific property included in the inventory of the estate. *See, e.g., In re Bailey's Estate*, 109 P.2d 356, 357 (Cal. Dist. Ct. App. 1941) (claims to specific property in estate neither those of "creditor" nor subject to filing requirements thereof); *Newport v. Hatton*, 231 P. 987, 993 (Cal. 1924).[22] *Cf. Knott v. Vachal*, 752 P.2d 39, 40 (Ariz. Ct. App. 1988) (equitable claims to specific property do not fall under statutory creditor claims). Correspondingly, this section should not proscribe those who claim to be heirs of the decedents, because they too do not fall within the definition of creditor in 8 CMC § 2924.

■ Additionally, excluding Connie and Francisco from the definition of "creditor" in 8 CMC § 2924(b) appears to comport with common sense. A court may distribute only that property in the estate rightfully included therein. *See, e.g., Matter of the Estate of Swandal*, 587 P.2d 368, 371 (Mont. 1978) (court could not distribute mineral rights improperly included in estate of deceased). Otherwise, anyone would be able to include in an inventory the personal or real property of another, property to which any legitimate claim of ownership during the probate proceedings would be barred after sixty days.

---

all properties, other than those listed in section 2902 of this chapter, by representation.

(c) If there is no surviving spouse, the surviving issue obtain all properties by representation.

(d) If there is no surviving spouse and no issue, the parents of the decedent take all properties, other than those listed in section 2902 . . . and if no surviving parents, then to the siblings of the decedent by representation.

[18] A ripe dispute is one which has matured sufficiently for judicial resolution. *Bauer v. McCoy*, 1 CR 248 (D.N.M.I. 1982).

[19] For example, if, on remand, the probate court finds that Loriebell is not an heir of Santiago and that the properties are not ancestral, Maria would take the properties in fee simple consistent with Article XII, see *supra* note 15, and the issue of the validity of 8 CMC §§ 2601 and 2902 would be moot. *See In re Duncan*, 3 CR 383, 387 (N.M.I. Trial Ct. 1988) (case rendered moot "when the parties lack a legally cognizable interest in the outcome").

[20] All claims against a decedent's estate which arise at or after the death of the decedent, including claims of the Commonwealth of the Northern Mariana Islands and any of its subdivisions, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are barred against the estate . . . unless presented . . . within 60 days after [either] performance by the personal representative is due . . . [or] after it arises . . . .

8 CMC § 2924(b)(1)-(2).

[21] Generally, a "creditor" is one who holds some contractual obligations against another and who has a right to require the fulfillment of an obligation or contract. *See, e.g., Downey v. Humphreys*, 227 P.2d 484 (Cal. Dist. Ct. App. 1951) (citing, in part, RESTATEMENT OF TRUSTS § 12 cmts. b, g (1935); RESTATEMENT OF AGENCY § 378 cmt. c, § 72 cmt. c (1933) (contrasting debtor/creditor relationship with those of trust and agency)). *See generally* BLACK'S LAW DICTIONARY 368-69 (6th ed. 1990); *cf.* RESTATEMENT OF SECURITY § 82(d) (1941).

[22] "It is well settled . . . that no one who claims as his own, adversely to an estate, specific property held and claimed by an estate, cannot be called a creditor of the estate within the meaning of probate law, and is not required to present a claim." *Newport v. Hatton*, 231 P. 987, 993 (Cal. 1924).

## CONCLUSION

Based on the above analysis, we:

I. **VACATE** the July 13, 1988, order of the Superior Court finding Loriebell an heir of the decedent and the decree of final distribution and **REMAND** this matter for further probate proceedings to determine the paternity and heirship issues consistent with this opinion;

II. **VACATE** the court's finding that 8 CMC §§ 2411, 2601 and 2902 are unconstitutional in their operation and application and **REMAND** for further proceedings to determine the factual issues regarding the nature of the property in the estate; and

III. **REVERSE** the court's finding that appellants Francisco and Connie Pangelinan were barred from filing claims of ownership to specific land in the inventory for failure to file a creditor's claim and **REMAND** for further proceedings on their claims.